**Vincent BARNETT, Defendant Below, Appellant,**

v.

**STATE of Delaware, Appellee.**

**No. 085, 2005.**

Supreme Court of Delaware.

Submitted: Nov. 7, 2005.

Decided: Feb. 9, 2006.

---

Joseph W. Benson, Esq. and Andrew G. Ahern, III, Esq. (argued) of Joseph W. Benson, P.A., Wilmington, Delaware for Appellant.

John Williams, Esq., of the Department of Justice, Dover, Delaware for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

RIDGELY, Justice.

Defendant–Appellant, Vincent Barnett, was convicted by a Superior Court jury of Rape First Degree (two counts), Rape Fourth Degree, Unlawful Sexual Contact Second Degree (two counts), and Unlawful Sexual Contact Third Degree. He was sentenced to forty years in prison suspended after thirty years minimum mandatory for decreasing levels of probation. In this appeal Barnett argues that the Superior Court abused its discretion by admitting evidence of several uncharged sexual offenses against the alleged victim, including three uncharged Class A felonies, during the State's case in chief. Barnett also argues that the Superior Court abused its discretion when it denied his motion for a mistrial based upon multiple instances of juror misconduct. Because Barnett's first claim has merit, we find it unnecessary to decide his second claim. We reverse the judgment of the Superior Court and remand this matter for a new trial.

## I.

Barnett was arrested and indicted for various sexual offenses against the teenage daughter of his former girlfriend. Four of the counts alleged conduct between December 14, 1998 and December 14, 2001. The remaining two counts that were tried alleged a time frame between December 15, 2001 and May 31, 2002. On November 6, 2003 Barnett filed a motion for a bill of particulars on the specific times and places where these offenses occurred. The Superior Court addressed the motion on the morning of trial, December 9, 2003. The State indicated that it intended to introduce multiple instances of sexual conduct with the alleged victim during the two time periods stated in the indictment. The Superior Court ordered that the State must choose one act for each charge. Notwithstanding this order, and over Barnett's objection, the trial judge gave the State permission to introduce the evidence of other uncharged acts to prove intent under D.R.E. 404(b).

The alleged victim testified concerning each of the six crimes charged. She said Barnett placed his penis in her mouth when she was with him and her mother at the A.I. duPont Institute cleaning offices at night. He committed the same act in a downstairs bathroom in her home when others were asleep. On another occasion, he took her from her bedroom to the downstairs living room where he touched but did not penetrate her vagina. She said Barnett did this on yet another occasion after he entered her bedroom at night when she was sleeping. She testified that when she was 16, Barnett placed his penis in her mouth in an upstairs bedroom at her home and that they were interrupted by her mother coming out of another bedroom. As to the last count, she testified that Barnett touched her vagina while they were in her bedroom and her brother almost walked in. For each of these offenses, she clearly identified Barnett as the person who committed the crime.

After this direct examination on each of the counts charged, the prosecutor questioned the alleged victim about a number of other unindicted crimes she said were committed against her by Barnett. These crimes included uncharged Class A felonies involving Barnett placing his penis in her mouth on three other occasions. She also testified that Barnett came into her bedroom, which she shared with her two younger sisters, and touched her vagina while she slept. She said touching occurred between twenty and forty times. Notice of all of these uncharged bad acts was given to defense counsel on the first day of trial. In an effort to control the use of this evidence, the trial judge gave the jury limiting instructions that it could only be used to show Barnett's intent.

The defense called five witnesses and each contradicted the testimony of the alleged victim in some way. Three of the witnesses were her siblings who were 16, 14 and 12 at the time of the trial. They testified that they all lived with their mother, that Barnett never stayed the night at their house, and that they had never seen him spend time alone with their sister. Another witness was Barnett's wife. She testified that although Barnett had a relationship with the alleged victim's mother in the early 1990s, Barnett and she had reconciled. He stayed home every night and never stayed out. She also described unique characteristics of Barnett's genitals that were inconsistent with the alleged victim's statement to the police that there was nothing unique or distinguishing about his private parts. Finally, the alleged victim's mother testified for the defense that Barnett never spent the night at her home. Further, she said he was never alone with her daughter, including at the A.I. duPont Clinic.

## II.

■ The question before us is whether the Superior Court abused its discretion in admitting evidence of other crimes to prove intent in this case under D.R.E. 404. We find the answer in *Getz v. State.*[1] In *Getz*, this Court addressed the admissibility of uncharged misconduct evidence to prove intent. In *Getz*, as in this case, the defendant's identity was not in dispute. Nor was there any issue of mistake or accident. Even so, the State introduced evidence of uncharged sexual offenses of the defendant in its case in chief. This Court said:

> While the State does have the burden of proving intent, as an element of the offense of rape first degree, the requisite state of mind is demonstrated by proof of the defendant's "conscious object to engage in conduct of that nature." 11 *Del. C.* § 231(a)(1). Further, the jury may infer that intention from the circumstances surrounding the act charged. 11 *Del. C.* § 307(a). Thus where, as here, the State presents direct evidence, through the testimony of the alleged victim, that an attack occurred, no evidential purpose is served by proof that the defendant committed other criminal acts of the same type.[2]

This Court further stated:

> While the defendant's plea of not guilty required the State to prove an intentional state of mind as an element of the offense, the plea itself did not present a predicate issue concerning intent sufficient to justify the State in attempting to negate lack of intent as part of its case-in-chief.[3]

**1.** 538 A.2d 726 (Del.1988).

**2.** *Id.* at 733.

**3.** *Id.*

The conclusion of this Court in *Getz* was that "the admission of the other crimes evidence in this case constituted an abuse of discretion without regard to the balancing test required under D.R.E. 403."[4]

The State relies upon several cases of this Court in support of its argument that the trial judge did not abuse her discretion.[5] None of these cases overruled *Getz*,[6] each is distinguishable from this case on its facts. The closest is *Vanderhoff* which involved sexual abuse of a child where this Court found no abuse of discretion in the admission of evidence that the accused used a flashlight to view the eight year old victim's vaginal area. The evidence was admitted for the purpose of showing that the defendant acted intentionally in his sexual contacts with the victim over the following four years. However, the basis for the defense objection in *Vanderhoff* was lack of relevance and remoteness in time. More importantly, in *Vanderhoff* the defense was that the defendant's conduct was not intended to be sexual in nature. Here, the defense was that no sexual contact even occurred.

We recognize that the trial judge in this case admitted the challenged evidence after applying the general guidelines of the *Getz* case.[7] Among those guidelines is the balancing test of D.R.E. 403. But, as this Court held in *Getz*, where intent also was not an issue, "the admission of the other crimes evidence in this case constituted an abuse of discretion *without regard to the balancing test required under D.R.E. 403*."[8] The evidence in this case from the alleged victim was contradicted in one way or another by five witnesses. The unfairness inherent in the State's use in its case-in-chief of uncharged bad acts identified on the morning of trial is indistinguishable from the unfairness this Court described in *Getz*. The result on appeal must be the same.

 "[R]eversal is required whenever the reviewing court 'cannot say that the error was harmless beyond a reasonable doubt.'" *Van Arsdall v. State*, 524 A.2d 3, 11 (Del.1987) (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). Given the substantial danger of unfair prejudice and the closeness of the evidence in this case, we cannot say that the error in admitting the other crimes evidence was harmless beyond a reasonable doubt.

## III.

The judgment of the Superior Court is REVERSED and this matter is REMANDED for a new trial consistent with this Opinion.

BERGER, Justice, dissenting.

I agree with the majority that the trial court erred in allowing the victim to testify about uncharged bad acts. I dissent, however, because I am satisfied that the error was harmless beyond a reasonable doubt. The State charged Barnett with multiple sexual crimes, of a similar nature, spanning four years, against one victim. Barnett was in a relationship with the victim's mother; he regularly stayed in the victim's home; and he acted as a surrogate father to the victim and her siblings. The victim testified about the six charged offenses

---

4. *Id.*

5. *Milligan v. State*, 761 A.2d 6 (Del.2000); *Joynes v. State*, 797 A.2d 673 (Del.2002); *Kendall v. State*, 726 A.2d 1191 (Del.1999); *Vanderhoff v. State*, 684 A.2d 1232 (Del.1996); *Patterson v. State*, 1987 WL 36205 (Del.1987).

6. 538 A.2d 726 (Del.1988). *See* n. 5 *supra*.

7. See *Getz* at 734.

8. *Id.* (emphasis added).

and then briefly described other instances of the same conduct. If the jury did not believe the victim's testimony about the charged offenses, there was nothing in her description of the other bad acts that made her sound more credible. If anything, since her testimony about the uncharged bad acts was less detailed and specific, the victim's additional testimony may have hurt her credibility.

Thus, looking only at the testimony itself, there is nothing to suggest that it was at all prejudicial under the facts of this case. Moreover, the trial court gave a limiting instruction before the bad acts questioning began and, again, as part of the jury instructions at the conclusion of the trial. This Court frequently relies on limiting instructions to "cure" the prejudicial effect of improper comments by witnesses and attorneys.[9] There is no reason why the trial court's limiting instruction in this case should be disregarded. Finally, Barnett was found guilty of lesser included offenses on three of the six charges against him. This verdict supports the conclusion that the jury heeded the limiting instruction and that Barnett, therefore, suffered no prejudice from the improper testimony.

For all of these reasons, I conclude that the error was harmless and that Barnett's convictions should not be overturned. Like the majority, I do not reach the other arguments advanced by Barnett.

---

9. *See, e.g.: Steckel v. State,* 711 A.2d 5 (Del. 1998); *Fuller v. State,* 860 A.2d 324 (Del. 2004); *Franklin v. State,* 2005 WL 528674 (Del.Supr.).