AURELIO BURTON, Defendant Below-Appellant,
v.
STATE OF DELAWARE Plaintiff Below, Appellee.
No. 343, 2006.
Supreme Court of Delaware.
Submitted: April 16, 2007.
Decided: May 15, 2007.
Before HOLLAND, JACOBS, and RIDGELY, Justices.

ORDER
HENRY DuPONT RIDGELY, Justice.
This 15th day of May 2007, upon consideration of the briefs of the parties and the record on appeal, it appears to the Court that:
(1) Defendant-Appellant Aurelio Burton ("Burton") appeals his Superior Court convictions of Burglary Second Degree, Resisting Arrest, and Offensive Touching. First, Burton argues that the trial court erred in finding that Burton exercised his peremptory challenges in violation of Batson v. Kentucky[1] and therefore denied him of his right to trial by jury. Second, Burton argues that the trial court incorrectly ruled that Resisting Arrest is a continuing offense. We find no merit to his arguments and affirm.
(2) On September 7, 2005, Officers William DuPont and Dave Rosenblum were working with the "Safe Streets Task Force" in Wilmington. Around 9:00 p.m., while responding to an unrelated complaint, they saw two people sitting on a porch on the corner of 8th and Monroe Streets. One of the people sitting on the porch appeared to match the description in the complaint, so the officers stopped their vehicle to take a closer look. As they slowed down, both of the men ran into a rear alley. As Officer DuPont followed one of the men, later identified as Burton, he saw him enter the backyard of 829 Madison Street, approach the rear steps of the residence, and try to force his way inside. A female was attempting to keep him out of the residence. Burton pushed the woman away and ran straight through the residence, out the front door and into a gold Acura.[2] DuPont approached the vehicle, removed Burton from it and placed him in custody. Burton was indicted for Burglary Second Degree, Resisting Arrest and Offensive Touching. Jury selection proceeded on February 23, 2006. The initial venire was dismissed after the trial judge found the defendant was using peremptory challenges in violation of Batson v. Kentucky. After a second jury selection and a trial, Burton was convicted of all the charges.
(3) Burton first argues that the trial court abused its discretion when it ordered a new jury selection based on the State's "reverse Batson" objection. Burton argues that the trial court erred by not accepting his response to the State's Batson challenge as being facially neutral. In reviewing a claim under Batson, whether a party offered a race-neutral explanation for a preemptory challenge is reviewed de novo.[3] The standard of review applied to the ultimate determination of whether there was purposeful discrimination, however, is clearly erroneous.[4] Such a deferential standard of review is applicable because "the evaluation of [counsel's] state of mind based on demeanor and credibility lies `peculiarly within the trial judge's province.'"[5]
(4) After twelve jurors had been selected for the panel, the parties began to use their preemptory challenges. After defense counsel made three challenges, the prosecutor objected:
Your Honor, I'm going to have to challenge these peremptories, and I think I can lay the groundwork here. This is the second time I've tried Mr. Burton in the last two months, both times with [Defense Counsel] and both times every male, every white male over 40, has been stricken by defense. Last time all the reasons were I didn't like the way he looked at me, I didn't like this. And Judge Babiarz was very critical and said those were the worst reasons he ever heard. This is a clear pattern, your Honor. Every white male, every strike here.
(5) Defense counsel responded by giving a race-neutral explanation for each challenge. These reasons included: one juror gave him the "evil eye," one gave him "bad vibes," and the other juror "was more body language." The Court concluded that in light of the prior history with the defendant, the reasons were "very flimsy . . . extremely flimsy . . . ."[6] The trial judge also noted a flaw in defense counsel's proffered reasons by observing, "I see people up there that if it's purely body language, they would be struck before the white males. If that's what you're telling me, they look uptight." She then dismissed the entire jury panel, and an entirely new jury panel was selected.
(6) Burton argues that because the trial judge did not disbelieve counsel's reasons or question his credibility and dismissed the jury anyway, the trial judge erred as a matter of law. In other words, in order to dismiss a panel after a race-neutral reason is given for the challenge, Burton argues, the panel may only be dismissed when the trial judge doubts the credibility of the challenged attorney.
(7) A criminal's right to a trial by jury is guaranteed under both the Federal and State Constitutions.[7] The use of preemptory challenges to exclude a person from a jury based on race or gender is a violation of the Equal Protection Clause of the Fourteenth Amendment.[8] To evaluate whether a party's use of a preemptory challenge violates the Constitution, the trial court must use the three-part Batson test:
First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race . . . . Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question . . . . Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination . . . .[9]
(8) Burton's argument that the trial judge did not doubt defense counsel's credibility is contradicted by the record. While defense counsel offered a race neutral explanation for each strike, the trial judge found those explanations pretextual. The trial judge called defense counsel's reasons "flimsy," noting a history of incredible challenges with this Defendant and commenting that other unchallenged jurors had similar body language to those of the challenged jurors. Indeed, the trial judge flatly rejected defense counsel's assertion that he was striking the jurors for reasons other than race.[10] On this record, the trial judge did not err when she dismissed the jury panel and ordered a new jury selection.
(9) Burton next argues that the trial judge erred by denying his motion for acquittal on the charge of Burglary Second Degree. We review the denial of a motion of judgment for acquittal to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the essential elements of the crime beyond a reasonable doubt.[11]
(10) For the State to secure a conviction of Burglary Second Degree, it must prove that the defendant knowingly entered a dwelling with the intent to commit a crime therein.[12] In this case, the underlying crime charged was Resisting Arrest.[13]
(11) Burton argues that the crime of Resisting Arrest is not a "continuing offense." That is, he contends that the crime was completed when he first fled from the officers.[14] Therefore, when he entered 829 North Madison Street, he was no longer committing the crime of Resisting Arrest.
(12) This Court recently decided Patrick v. State, a case with similar facts.[15] In Patrick, this Court held:
The issue of whether or not the crime of resisting arrest is a continuing offense is one of legislative intent. As a public policy matter, we have no doubt that the General Assembly intended to deter people from breaking into homes in order to avoid being arrested. [The defendant's] ongoing evasion of the police was a continuing offense. He engaged in a continuous course of conduct by knowingly and unlawfully attempting to enter the home with the intent to continue to resist arrest inside the home. Therefore, [the defendant] committed two crimes: resisting arrest and attempted burglary second degree.[16]
(13) The same rationale of Patrick applies here. Without interruption, Burton ran from the porch into someone's home with the clear intent of evading the police. In fact, he told the woman attempting to keep him out of her home that he was trying to get away from police and offered her money to let him in. Moreover, while attempting to gain access to the building, the officer was yelling to Burton to stop and get on the ground.
(14) Burton argues that the presumption against interpreting a criminal statute as a continuous offense has not been overcome. Burton's argument is unpersuasive. Neither Toussie v. United States[17] nor Section 205(f) of the Delaware Criminal Code requires an explicit legislative intent for a court to find a crime a continuing offense. Instead, the United States Supreme Court recognized that continuing offenses can be found when "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one."[18] Similarly, Section 205(f) provides that "[a]n offense is committed either when every element occurs, or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated."[19] In Patrick, this Court had "no doubt that the General Assembly intended to deter people from breaking into homes in order to avoid being arrested." In other words, it "plainly appears" that the General Assembly intended the crime of resisting arrest to be a continuing offense. The Superior Court did not err when it denied Burton's motion for a judgment of acquittal.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] 476 U.S. 79, 96-98 (1986).
[2] Burton told the woman that the police were after him and offered her money for her to let him inside.
[3] Barrow v. State, 749 A.2d 1230, 1238 (Del. 2000).
[4] Hernandez v. New York, 500 U.S. 352, 372 (1991) ("Whether a prosecutor intended to discriminate on the basis of race in challenging potential jurors is, as Batson recognized, a question of historical fact."); Wilson v. State, 2002 WL 1159714, at *1 (Del. Supr.) ("Because a trial judge's acceptance or rejection of a party's reason for striking a juror is almost solely based on the credibility of that party's counsel, [this Court] accord[s] great deference to the findings of the trial judge."); Robertson v. State, 630 A.2d 1084, 1090 (Del. 1993).
[5] Jones v. State, Del. Supr., ___ A.2d ___, No. 482, 2005, Ridgely, J. (March 6, 2007) (quoting Hernandez, 500 U.S. at 365).
[6] In a trial one month earlier, involving the same prosecutor and defense counsel, the prosecutor challenged defense counsel's preemptive strikes of white males over 30. The trial judge rejected the challenge but did find defense counsel's reasons of "body language" to be "arbitrary and irrational."
[7] Sudler v. State, 611 A.2d 945, 947 (Del. 1992).
[8] Batson, 476 U.S. at 96-98.
[9] Jones, No. 482, at 8.
[10] Counsel]: I'm striking them not because they are white.
THE COURT: I think you are."
[11] White v. State, 906 A.2d 82, 85 (Del. 2006).
[12] 11 Del. C. § 825.
[13] 11 Del. C. § 1257. The indictment stated that Burton "did knowingly enter or remain unlawfully in a dwelling located at 829 North Madison Street with the intent to commit the crime or resisting arrest therein."
[14] According to Burton, the crime of Resisting Arrest in this case was committed when he ran off the porch.
[15] Patrick v. State, Del. Supr., No. 170, 2006, Steele, C.J. (March 15, 2007).
[16] Id.
[17] Toussie v. United States, 397 U.S. 112, 115 (1970) ("These considerations do not mean that a particular offense should never be construed as a continuing one. They do, however, require that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.").
[18] Id.
[19] 11 Del. C. § 205(f).