David BUCHANAN, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 613, 2008.

Supreme Court of Delaware.

Submitted: July 8, 2009.
Decided: Sept. 8, 2009.

Nicole M. Walker, Office of the Public Defender, Wilmington, Delaware for appellant.

Abby Adams, Department of Justice, Georgetown, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

STEELE, Chief Justice.

David Buchanan, the defendant below, appeals from his Superior Court convic-

tions of Third Degree Burglary, Carrying a Concealed Deadly Weapon, and Possession of a Deadly Weapon by a Person Prohibited. Buchanan claims that the State failed to produce sufficient evidence to establish: (1) Burglary, because the State used his entry into his property contrary to a Family Court order as a basis to establish both unlawful entry and the predicate offense (Criminal Contempt) for Burglary; (2) Carrying a Concealed Deadly Weapon, because Buchanan's firearms were not readily accessible; and, (3) Possession of a Deadly Weapon by a Person Prohibited, because the State failed to prove Buchanan *knowingly* possessed firearms while prohibited. We find that the State cannot use Buchanan's violation of a Family Court order as a predicate offense to establish Burglary. We further conclude that the State produced sufficient evidence to establish Carrying a Concealed Deadly Weapon and Possession of a Deadly Weapon by a Person Prohibited. Therefore, we REVERSE in part and AFFIRM in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Buchanan and Barbara Richards divorced on September 6, 2003. The Family Court, as part of a property division, ordered the sale of Buchanan's and Richard's former marital home on Hudson Road in Laurel, Delaware. Buchanan refused to cooperate with Richards in selling the home. On February 5, 2007, the Family Court ordered Buchanan "evicted and excluded" from the Hudson Road property. Buchanan refused to vacate the home. On October 24, 2007, the Family Court issued a criminal contempt order,[1] authorizing the State Police to physically remove Buchanan from the Hudson Road property.

Shortly thereafter, Buchanan's business, Buchanan Farms, Inc., filed for bankruptcy. As a consequence, the Family Court stayed the eviction and contempt orders. On December 26, 2007, the United States Bankruptcy Court informed the Family Court that it had dismissed Buchanan Farms' bankruptcy petition. The Family Court, on January 3, 2008, lifted its stay of the eviction and contempt orders. On January 8, 2008, Delaware State Police Corporal William Wallace served Buchanan with a copy of the order lifting the stay. After explaining that order to Buchanan, Corporal Wallace escorted him to the Hudson Road property so he could retrieve his belongings. After Buchanan retrieved his belongings, Wallace told him that if he returned to the property, he would face criminal charges.

On January 26, 2008, Barbara Richards and her new husband, David Richards, planned to enter the Hudson Road property to prepare it for a real estate showing. They told the police their intentions. The police asked the Richards to wait at a nearby convenience store while the police checked the property. Corporal Wallace went to the Hudson Road property, where he saw smoke coming from the chimney and Buchanan's truck parked outside. Wallace called Buchanan's cell phone, and told Buchanan that if he was in the house, he must come out and turn himself in. Buchanan denied being in the house. Other police officers arrived at the scene and set up a perimeter around the home. One police officer saw Buchanan fleeing from the rear of the house. The police chased Buchanan and arrested him in the woods nearby.

Several weeks later, Barbara Richards sought a Protection From Abuse ("PFA") order against Buchanan in the Family

1. 11 *Del. C.* § 1271.

Court. The Family Court granted her an *ex parte*, temporary PFA on March 7, 2008, which prohibited Buchanan from possessing firearms, contacting Richards, or entering the Hudson Road property. Buchanan was served with the temporary PFA on March 10. On March 13, the Family Court held a hearing on the temporary PFA and issued a permanent PFA order containing the same prohibitions. Buchanan was served with a copy of the permanent PFA at the conclusion of the hearing.

Immediately after the hearing, Buchanan left the courthouse and got into his car. State Police Corporal Hudson Keller had run a DMV check on Buchanan earlier that day and discovered that DMV had suspended Buchanan's operator's license. Keller watched and waited for Buchanan to leave the courthouse and head toward his car. Rather than prevent Buchanan from illegally driving his car, Keller allowed him to drive it, followed him and stopped him for driving while suspended. Keller asked Buchanan if he had "anything" in the car. Buchanan responded that he might have guns in the car, at which point Keller took Buchanan into custody and searched the car. In a green zippered bag behind the front passenger's seat, Keller found a .45 caliber semi-automatic pistol, a .22 caliber pistol, a loaded magazine for the .45 in the original manufacturer's wrapping, and additional ammunition for the .45. Neither gun was loaded.

In connection with these incidents, the State prosecuted Buchanan for: Third Degree Burglary; Criminal Contempt; two counts of Carrying a Concealed Deadly Weapon; three counts of Possession of a Deadly Weapon by a Person Prohibited; Resisting Arrest; Criminal Mischief; and, Possession of a Firearm During the Commission of a Felony.[2] At trial, after the State's case, Buchanan moved for a judgment of acquittal on the charges of Third Degree Burglary and Carrying a Concealed Weapon. The trial judge denied the motion. A jury convicted Buchanan of the all charges except Criminal Mischief and Possession of a Firearm During the Commission of a Felony. Buchanan timely appealed.

## ANALYSIS

**I. *Intent to Commit Criminal Contempt by Merely Unlawfully Entering One's Home Cannot Be a Predicate Offense for Burglary.***

 When denying Buchanan's motion for a judgment of acquittal, the trial judge found that Buchanan's intent to violate the Family Court's eviction order could properly serve as a predicate offense for Third Degree Burglary. We review a trial judge's denial of a motion for judgment of acquittal *de novo* "to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the essential elements of the crimes charged beyond a reasonable doubt."[3]

Buchanan's argument is straightforward: an unlawful entry alone cannot establish both elements of Third Degree Burglary, i.e., unlawful entry into a building and intent to commit a crime therein.[4]

---

2. The State entered a *nolle prosequi* for Second Degree Burglary, one charge of Criminal Contempt, and Driving on a Suspended or Revoked License.

3. *White v. State*, 906 A.2d 82, 85 (Del.2006) (internal citation omitted).

4. *See* 11 *Del. C.* § 824 (Third Degree Burglary). "A person is guilty of burglary in the third degree when the person knowingly enters or remains unlawfully in a building with intent to commit a crime therein." *Id.*

An unlawful entry, without more, establishes only Criminal Trespass,[5] which is a lesser included offense of Burglary.[6] The State produced evidence of Criminal Trespass (unlawful entry) and used the same facts to establish the conviction of Criminal Contempt.[7] Buchanan violated the eviction order, by entering the Hudson Road property, his marital home, contrary to the Family Court Order. Because his Criminal Contempt conviction was based solely on an entry in violation of the eviction order, Buchanan argues that his intent to violate the eviction order cannot do "double duty" and also serve as a predicate offense for Burglary. At most, Buchanan claims, he could only be convicted of Criminal Trespass or Criminal Contempt.[8]

Buchanan relies on *People v. Lewis,*[9] a New York Court of Appeals case. In *Lewis,* the defendant violated an order of protection by going to the protected person's apartment and harassing her.[10] The Court of Appeals held that:

> the 'intent to commit a crime therein' element of burglary . . . may be satisfied by a defendant's intent to engage in conduct prohibited by an order of protection while in the banned premises. That element, however, is not satisfied solely by a defendant's intent to violate an order of protection by entering the dwelling that the order of protection declares off limits.[11]

The Court of Appeals in *Lewis* reasoned that to allow unlawful entry to serve as the "sole predicate crime" would essentially allow "every violation of a do not enter provision of an order of protection [to] become burglary the instant the defendant knowingly entered the banned premises."[12]

In response, the State argues that Buchanan's Criminal Contempt was a continuing crime, and therefore, Buchanan's entry into his own home in violation of the eviction order established both elements of Burglary (unlawful entry and intent to commit the crime of Criminal Contempt), as well as Criminal Contempt. That continuing intentional criminal act, the State argues, serves as a predicate offense for Buchanan's Third Degree Burglary conviction.

The State relies on *Burton v. State,* in which the defendant, after spotting police, ran away and forced his way into a nearby home.[13] The trial judge denied the defendant's motion for judgment of acquittal and a Superior Court jury convicted him of Resisting Arrest and Second Degree Burglary.[14] On appeal, the defendant claimed that he completed resisting arrest once he fled from the police, the crime of Resisting Arrest could not support the intent element of Burglary.[15] We found Resisting Arrest to be a continuing crime, and thus, a predicate offense for Burglary, because the legislature intended the crime of Re-

---

5. *See* 11 *Del. C.* § § 821–23.

6. *See, e.g., Patrick v. State,* 2007 WL 773387, at *1 (Del.).

7. *See* 11 *Del. C.* § 1271.

8. *See* 11 *Del. C.* § 206; *Poteat v. State,* 840 A.2d 599, 604–605 (Del.2003).

9. *People v. Lewis,* 5 N.Y.3d 546, 807 N.Y.S.2d 1, 840 N.E.2d 1014 (2005).

10. *Id.* at 1, 840 N.E.2d at 1015–16.

11. *Id.* at 1, 840 N.E.2d at 1015.

12. *Id.* at 1, 840 N.E.2d at 1017.

13. *Burton v. State,* 2007 WL 1417286, at *1 (Del.).

14. *Id.* at *1–2.

15. *Id.* at *3.

sisting Arrest to deter people from entering other peoples' homes unlawfully in order to avoid being arrested.[16] Therefore, when the defendant forced his way into a nearby home (unlawful entry), he also intended to evade the police and therefore to commit the separate crime of Resisting Arrest.[17] By analogy to *Burton*, the State argues, Buchanan's Criminal Contempt continued beyond his unlawful entry, because Buchanan intended to remain in the former marital home. Therefore, Buchanan's continuing Criminal Contempt of the Family Court order sufficiently established the predicate offense for Burglary.

We must determine whether Criminal Contempt can be or was here a continuing crime that can serve as a predicate for Burglary.[18] We have recognized that the legislative intent underlying Resisting Arrest is to deter people from entering other persons' homes in order to continue to avoid arrest.[19] Thus, the General Assembly intended to recognize Resisting Arrest as a continuing crime.[20] Criminal Contempt, however, takes various forms. In

this case the sole basis for unlawful entry is a violation of a Family Court order.[21] Absent that order, Buchanan had every legal right to enter and remain on his own property. The State acknowledges that there is no clear definition for what constitutes a *continual* disregard of a court order. Other jurisdictions have concluded that whether committing Criminal Contempt or violating a "do not enter" court order may serve as a predicate offense for Burglary, rests on whether the defendant intends merely to violate the court order or to commit an additional criminal act.[22] The additional criminal act may be one of the prohibited acts in the court order.[23]

In *Lewis*, the New York Court of Appeals upheld a burglary conviction. The court found that the defendant violated the order of protection when he unlawfully entered his female friend's apartment with the intent to harass, because he kicked her, yelled, and threw several personal items out of her window.[24] The defendant's violation of the order for protection could sustain the intent to commit a crime

16. *Id.*

17. *Id.*

18. *Id.* (citing *Patrick v. State*, 2007 WL 773387, at *3 (Del.)).

19. *Burton v. State*, 2007 WL 1417286, at *3 (Del.); *Patrick v. State*, 2007 WL 773387, at *3 (Del.).

20. *Burton*, 2007 WL 1417286, at *3; *Patrick*, 2007 WL 773387, at *3.

21. *See* 11 *Del. C.* § 1271.

22. *See e.g., People v. Vandewalle*, 46 A.D.3d 1351, 847 N.Y.S.2d 816 (2007) (defendant was guilty of criminal contempt and not burglary when he unlawfully entered ex girlfriend's trailer in violation of a protection order because there was no evidence he intended to harass her even though he contacted her); *People v. Carpio*, 39 A.D.3d 433, 835

N.Y.S.2d 107 (2007) (burglary conviction was upheld when the defendant intended to violate a provision of the order, which required him to stay away from the person named in the order); *People v. Lewis*, 5 N.Y.3d 546, 807 N.Y.S.2d 1, 840 N.E.2d 1014 (2005) (violation of a protection order by merely entering banned premises is punishable only as criminal contempt or criminal trespass); *State v. Stinton*, 121 Wash.App. 569, 89 P.3d 717 (2004) (evidence of a violation of a protection order prohibiting defendant from engaging in harassing conduct could serve as the predicate offense for burglary because it was a separate crime from the unlawful entry); *State v. Robinson*, 656 A.2d 744 (Me.1995) (conviction for burglary upheld because evidence showed the defendant violated a protection order by entering a residence with the intent to commit assault therein).

23. *Carpio*, 835 N.Y.S.2d at 108.

24. *Lewis*, 807 N.Y.S.2d 1, 840 N.E.2d at 1015.

"therein" element of Burglary, the Court of Appeals held, because the order prohibited the defendant from contacting *(i.e.* harassing) that female.[25] The Court of Appeals noted that entering a premise in violation of a court order can support a conviction of Criminal Contempt or Criminal Trespass, but not of Burglary where there is no intent to commit a separate crime.[26]

Similarly, in *Colvin*, the Minnesota Supreme Court held that the legislature did not intend for Criminal Trespass to satisfy the intent element of Burglary.[27] In *Colvin*, the defendant violated a protection order that prohibited him from entering his ex wife's house or abusing her.[28] The defendant entered the house but left, without committing any additional crime, when a guest asked him to do so.[29] Therefore, the Minnesota Supreme Court reversed the defendant's Burglary conviction.[30]

A violation of an order of protection prohibiting entering into a premise squares with the elements of Criminal Contempt (violation of the Order itself) [31] or Criminal Trespass (related to the Order's prohibition).[32] If Buchanan had intended to commit an additional crime upon entry, then that might establish Burglary. But, violating a court order, without more, cannot provide the predicate offense for Burglary, because no evidence suggests that at the time Buchanan entered unlawfully, he intended to commit an additional crime while occupying his own property.

Therefore, we **REVERSE** the Third Degree Burglary conviction.

## II. *Buchanan's Concealed Firearms Were Sufficiently Accessible to Him That They Were "Carried" Within the Meaning of the Statute.*

■ In denying Buchanan's motion for a judgment of acquittal, the trial judge found that the State had established a *prima facie* case of Carrying a Concealed Deadly Weapon. The trial judge found that Buchanan's guns were within his "reach" and that Buchanan could quickly load the guns and have them ready for use.

Buchanan claims that because his firearms were not readily accessible, he did not "carry" them within the meaning of the statute. Buchanan contends that the legislature did not intend to prohibit his conduct when it enacted the Carrying a Concealed Deadly Weapon Statute.[33] The legislative intent, as this Court has held, "was to remove the 'temptation and tendency' to use concealed deadly weapons under conditions of 'excitement.' The legislative purpose, both originally and presently, seems to be the avoidance of a deadly attack against another by surprise."[34]

11 *Del. C.* § 1442 provides that "[a] person is guilty of carrying a concealed deadly weapon when the person carries concealed a deadly weapon *upon or about* the person without a license to do so as provided by § 1441 of this title."[35] Here, it is undisputed that: (1) Buchanan's fire-

---

**25.** *Id.* at 1, 840 N.E.2d at 1015, 1018.

**26.** *Id.* at 1, 840 N.E.2d at 1017.

**27.** *State v. Colvin*, 645 N.W.2d 449 (Minn. 2002).

**28.** *Id.* at 450–51.

**29.** *Id.*

**30.** *Id.* at 456.

**31.** 11 *Del. C.* § 1271.

**32.** 11 *Del. C.* §§ 821–23.

**33.** 11 *Del. C.* § 1442 (emphasis added).

**34.** *Dubin v. State*, 397 A.2d 132, 134 (Del. 1979) (citations omitted).

**35.** 11 *Del. C.* § 1442.

arms were deadly weapons; (2) Buchanan did not have a license to carry; and (3) the firearms were not *on* Buchanan's person. Thus, the issue becomes whether the firearms were sufficiently accessible to Buchanan to have been carried *about* his person. The trial court held that they were. We review that ruling *de novo*, to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found, beyond a reasonable doubt, that the guns were sufficiently accessible to Buchanan to be "about" his person.[36]

In *Dubin v. State*,[37] we articulated three nonexclusive factors for determining whether a weapon being transported in a car is sufficiently accessible to the driver to be "carried." Those factors are: (1) "Would the [driver] have to appreciably change his position in order to reach the weapon?" (2) "Could the [driver] reach the weapon while driving?" and (3) "How long would it take for the [driver] to reach the weapon, if the defendant were provoked?"[38]

Neither Buchanan nor the State applies the *Dubin* factors with analytical rigor. The State relies on Corporal Keller's testimony that the bag containing the guns were within Buchanan's reach, and that that testimony ends the inquiry.[39] Buchanan asserts that the guns were not accessible to him, because he would have had to "reach into the back of the car, unzip the bag, take out one of the weapons, take out the ammunition from its packaging and load the weapons" and perform all those steps with one hand while driving or after pulling over to the side of the road.

Buchanan's argument rests on the premise that to be "carried" the firearm must be ready to use. That premise is incorrect. For better or worse, Delaware case law for almost one hundred years establishes that a gun need not be loaded and ready to use in order be a carried, concealed deadly weapon.[40] Therefore, Buchanan need only be able to reach into the back of the car, pick up the bag containing the guns, and remove one of the pistols. Viewed in the light most favorable to the State, the evidence suggests that while Buchanan was driving a sedan (a Honda Accord), he had guns in a bag behind the front passenger seat and that he could physically touch the bag. That evidence suffices for a rational jury to conclude that Buchanan could access the firearms and, therefore, "carried" them while concealing them in a bag.

Buchanan cites two Florida cases—*Boswink v. State*[41] and *Alexander v. State*[42]—to support his argument that his guns were not accessible to him. Neither case is apposite. In *Boswink*, the Florida District Court of Appeals found that the firearms (which were partially enclosed in a gun case behind the driver's seat of a

---

36. *White v. State*, 906 A.2d 82, 85 (Del.2006).

37. *Dubin v. State*, 397 A.2d 132 (Del.1979).

38. *Id.* at 135.

39. Prosecutor: ... With respect to the bag [containing the guns] that was located in Mr. Buchanan's vehicle, was that within Mr. Buchanan's reach?

Corporal Keller: Yes it was.

40. *See State v. Quail*, 92 A. 859 (Del.Gen.Sess. 1914) ("We think that a revolver, even though unloaded or in such a defective condition that it could not be fired, cannot be lawfully carried in this state concealed upon the person."); *Cf. Corbin v. State*, 1991 WL 316965, at *4 (Del.) (adopting the *Quail* rule that a firearm need not be loaded or operable to sustain a conviction for Possession of a Deadly Weapon by a Person Prohibited).

41. *Boswink v. State*, 636 So.2d 584 (Fla.Dist. Ct.App.1994).

42. *Alexander v. State*, 477 So.2d 557 (Fla. 1985).

truck) could only be reached "by opening the door and awkwardly reaching behind the seat [and that] [i]n all probability, he could not accomplish the feat without actually exiting the truck." [43] The defendant's guns were therefore inaccessible. Here, in contrast, Corporal Keller testified that Buchanan could reach the bag containing the guns. Unlike *Boswink*, Buchanan would not have to leave his car to access the guns.

In *Alexander*, the Florida Supreme Court held that the defendant had not violated Florida's concealed carry law, because: (1) his gun was secured in a zipped bag; (2) that bag was a "gun case;" and, (3) under Florida law weapons stored in a "gun case" are not subject to the concealed carry statute. [44]

Delaware, unlike Florida, has no "gun case" exception to its concealed carry statute. Oddly, placing one's weapons in a case, which *ipso facto* makes them harder to access also "conceals them." Openly displaying the weapons on the back seat, making them more easily, if not readily, accessible constitutes no crime, while bagging them (making them less accessible) constitutes a felony—in Delaware. Therefore, Buchanan violated the Delaware's Carrying a Concealed Deadly Weapon statute by possessing, within his reach, deadly, unloaded pistols in a zipped bag.

### III. *Buchanan Knowingly Possessed His Firearms While Prohibited And No Implied Exception to the Possession Statute Excuses His Possession.*

■ The trial judge implicitly concluded that Buchanan *knowingly* possessed his

firearms while being prohibited from doing so, but did not address the "knowing" element explicitly. On appeal, Buchanan argues that he could not have "knowingly" possessed the firearms, because: (1) his "innocent" possession undercuts the "knowing" element of the offense; and (2) as a matter of policy, Delaware should recognize a limited exception to the Person Prohibited statute, to allow a person a reasonable amount of time to surrender firearms after possession becomes prohibited. The State replies that Buchanan did not innocently possess his weapons because, before the Family Court judge issued the permanent PFA order on March 13, a temporary PFA already in force barred Buchanan from possessing firearms as of March 7. Buchanan knew of the temporary PFA with the firearms prohibition on March 10. Buchanan also knew or should have known that the "temporary" PFA would remain in force until a further hearing and that there was a significant likelihood that the Family Court would make the temporary PFA permanent after the hearing. [45]

There are two issues: (i) did Buchanan innocently possess his firearms so as to negate the requirement of "knowing" possession; and, (ii) should Delaware recognize an exception to the Person Prohibited statute, to permit those who are in legal possession of firearms a reasonable time to surrender the weapon to authorities after they become a "person prohibited?" Buchanan did not advance these claims below. We therefore review them for plain error. [46]

We find no merit to Buchanan's contentions. Buchanan does not address the fact

43. 636 So.2d at 585.

44. 477 So.2d at 560.

45. The temporary PFA states: "The Respondent is PROHIBITED for the DURATION of this ORDER from POSSESSING FIREARMS."

46. *Chance v. State*, 685 A.2d 351, 354 (Del. 1996) (internal citation omitted).

that the temporary PFA order already prohibited him from possessing firearms. That undisputed fact eviscerates any claim that he possessed his firearms "innocently." [47] That fact also undercuts Buchanan's argument that we should engraft a "reasonable time to surrender firearms to authorities" exception upon the statute. In any event, such an exception, even if recognized, would not help Buchanan, because Buchanan unlawfully possessed the guns during the period between the temporary and permanent PFAs.

\* \* \*

For the foregoing reasons, we RE-VERSE in part and AFFIRM in part the judgment of the Superior Court.

---

**47.** He received the temporary PFA prohibiting him from possessing firearms so he is not relieved by 11 *Del. C.* § 1448(a)(6), which prohibits the possession of deadly weapons by people subject to a PFA order, but it does not apply to *ex parte* PFA orders.