IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RONDAIGES A. HARPER, | § | |
| | § | No. 453, 2014 |
| Defendant Below, | § | |
| Appellant, | § | Court Below - Superior |
| | § | Court of the State of Delaware |
| v. | § | in and for Sussex County |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 1303016992 |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: June 24, 2015
Decided: August 13, 2015

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

Upon appeal from the Superior Court.  **REVERSED** and **REMANDED**.

John F. Brady, Esquire, The Brady Law Firm, Wilmington, Delaware, for Appellant.

John Williams, Esquire, Department of Justice, Dover, Delaware, for Appellee.

**SEITZ**, Justice:

# I. INTRODUCTION

A Superior Court jury convicted the defendant, Rondaiges Harper, of carjacking in the first degree, kidnapping in the first degree, and two counts of conspiracy in the second degree. On appeal he argues that his convictions should be reversed because the crime of carjacking was completed by the time he joined the two teenagers who had stolen the victim's car and confined her in the trunk. We conclude, based on the language and legislative history of Delaware's carjacking statute, that the crime of carjacking is not a continuing crime, but instead is completed at the point when all the elements of the crime have been satisfied. Because the carjacking of the victim's vehicle was completed before Harper's involvement, and each of Harper's convictions depends upon carjacking as a predicate crime, we reverse his convictions and remand for proceedings not inconsistent with this opinion.

# II. FACTUAL AND PROCEDURAL HISTORY

On March 18, 2013, Margaret Smith, an 89-year old widow, was eating ice cream at Chicken Man in Milford, Delaware, when she was approached by Junia McDonald, age fourteen, and Jackeline Perez, age fifteen. McDonald and Perez asked Smith if she would give them a ride home. After initially refusing, Smith reconsidered and agreed.[1]

---

[1] App. to Opening Br. at 9 (Trial Test. of Smith, June 25, 2014).

McDonald and Perez directed Smith to drive the girls to a number of locations throughout Milford.  After arriving at each location, McDonald and Perez told Smith to drive elsewhere.[2]  At the last stop, one of the girls demanded the keys to Smith's car.  Smith refused and a struggle ensued.  McDonald and Perez took the keys to Smith's 2001 Buick LeSabre and forced Smith inside the trunk.[3]

McDonald and Perez drove Smith's car to Coverdale, Delaware, where they picked up Phillip Brewer, an acquaintance with whom McDonald had made plans to meet on Facebook.  Brewer was at his mother's house at the time.[4]  McDonald, Perez, and Brewer then traveled the short distance from Brewer's mother's house to where Harper was staying, also in Coverdale.  Harper joined McDonald, Perez, and Brewer in the car.[5]  Unbeknownst to Harper and Brewer, Smith was still held captive in the trunk.

After Harper joined the group, the teenagers drove to a nearby park.  At the park, the teenagers listened to music until the car battery died.[6]  Harper and Brewer then walked the short distance to Brewer's mother's house to borrow her car to jumpstart the dead battery.  Upon returning to the park, Harper and Brewer realized there were no jumper cables in Brewer's mother's car.  Harper and Brewer asked

---

[2] *Id.* at 11.
[3] *Id.* at 11-12.
[4] App. to Opening Br. at 25-26 (Trial Test. of Brewer, June 25, 2014).
[5] *Id.* at 26-28.
[6] *Id.* at 28-29.

McDonald and Perez if they could look in the trunk of the Buick for jumper cables. McDonald refused, stating that her uncle was coming to jumpstart the car.[7]

Brewer and McDonald got into Brewer's mother's car. Harper and Perez got back into Smith's car.[8] After some time, Harper approached Brewer, who was still with McDonald in his mother's car. Harper told Brewer that there was someone in the trunk of the car.[9] Harper and Brewer then opened the trunk and saw Smith inside. Harper asked McDonald and Perez why Smith was in the trunk. They told Harper and Brewer they had traded liquor for the use of Smith's car and that Smith preferred to be in the trunk rather than the backseat.[10] While the trunk was open, Smith told Harper and Brewer that the car belonged to her. Harper and Brewer removed Smith from the trunk of her car, but the group decided to go to Brewer's grandmother's house, so Harper and Brewer forced Smith back into the trunk.[11]

After leaving the park, McDonald, Perez, Brewer, and Harper smoked marijuana at Brewer's grandmother's house.[12] The group then returned to the park to look for jumper cables in Smith's car. After removing Smith from the trunk to get the jumper cables stored there, Harper and Brewer tried to jumpstart the

---

[7] App. to Answering Br. at 59-60 (Trial Test. of Brewer, June 25, 2014).
[8] *Id.* at 60.
[9] *Id.*; App. to Opening Br. at 30 (Trial Test. of Brewer, June 25, 2014).
[10] App. to Opening Br. at 30-31 (Trial Test. of Brewer, June 25, 2014).
[11] *Id.* at 31-32.
[12] *Id.* at 33; App. to Answering Br. at 61 (Trial Test. of Brewer, June 25, 2014).

3

battery. The two could not locate the battery, so Harper again forced Smith back into the trunk.[13]

Early in the morning the next day, the group returned to the park, this time with Brewer's uncle who knew how to jumpstart the battery to Smith's car. Brewer's uncle jumpstarted the battery, but no one mentioned to him that Smith was trapped in the trunk.[14] With Smith's car working again, the group dropped off Brewer's mother's car at her house and then drove Smith's car to Seaford, Delaware, and booked a room at a Days Inn hotel under Harper's cousin's name.[15]

At about midday, the group drove back to Coverdale to purchase marijuana.[16] Smith was still locked in the trunk of the car. At some point, the group stopped at a fast food restaurant to eat. At the restaurant, McDonald spoke with Smith by way of a trunk-access opening behind the backseat armrest and asked if Smith wanted anything to eat. Smith replied that she wanted to go home.[17]

To this point, and until she was released, Smith was not given any food or water and was unable to take her medication.[18] Despite her protestations, Smith

---

[13] App. to Answering Br. at 61-62 (Trial Test. of Brewer, June 25, 2014).
[14] App. to Opening Br. at 34 (Trial Test. of Brewer, June 25, 2014).
[15] *Id.* at 34-35.
[16] *Id.* at 36.
[17] App. to Answering Br. at 63-64 (Trial Test. of Brewer, June 25, 2014).
[18] App. to Opening Br. at 15 (Trial Test. of Smith, June 25, 2014); App. to Answering Br. at 45 (Trial Test. of Smith, June 25, 2014).

4

was not allowed to use a bathroom.[19] Throughout the ordeal, Smith banged on the trunk to no avail.[20]

During the day and into the evening, the group made several trips to and from Coverdale to purchase marijuana.[21] On one of these trips, Perez suggested that the group drive into Milford, and burn the car with Smith inside it.[22] Harper and Brewer objected. Harper suggested that they instead drop Smith off in the Calvary Road cemetery in Seaford.[23] Brewer drove Smith's car to the cemetery. McDonald, Perez, and Harper removed Smith from the trunk of her car and left her in the graveyard. The teenagers then returned to their hotel room.[24]

Sometime between 7:30 and 8:00 a.m. the following morning, Betty Edwards was visiting her son's grave at the Calvary Road cemetery.[25] She saw Smith emerge from a wooded area of the cemetery using two sticks to support herself.[26] Despite what Edwards described as a cold morning, Smith was wearing

---

[19] App. to Opening Br. at 15 (Trial Test. of Smith, June 25, 2014); App. to Answering Br. at 51 (Trial Test. of Smith, June 25, 2014).
[20] App. to Opening Br. at 15-16 (Trial Test. of Smith, June 25, 2014).
[21] App. to Opening Br. at 36-37 (Trial Test. of Brewer, June 25, 2014).
[22] *Id.* at 37.
[23] *Id.*
[24] *Id.* at 38-39.
[25] App. to Answering Br. at 3-5 (Trial Test. of Edwards, June 23, 2014).
[26] *Id.* at 7-8.

only wet and dirty socks on her feet.[27]  Smith implored Edwards to drive her to a store to purchase two canes.[28]  Edwards quickly dialed 911.[29]

Delaware State Police Trooper James Gooch responded to Edwards' 911 call and found Smith at the cemetery appearing disheveled and confused.[30]  Trooper Gooch took Smith to the hospital and notified Smith's niece, Sabrina Carroll, that her aunt had been located.[31]  Later, police officers searching the cemetery found Smith's medication, cane, and urine-soaked jeans near a headstone, but were unable to locate her car.[32]  They did, however, find tire tracks and what Trooper Gooch called "crawling marks, hands, knees, toes."[33]

Later that evening Delaware State Police Trooper Patrick Schlimer was on patrol and came across Smith's car, checked the license number, and realized that it was listed as a missing vehicle.  Trooper Schlimer stopped the car and found five people inside:  Harper, Brewer, McDonald, Perez, and Daniaya Smith (Daniaya Smith had joined the group after Smith was released in the cemetery). The

---

[27] *Id.* at 8, 10.

[28] *Id.* at 9.

[29] *Id.* at 11.

[30] App. to Answering Br. at 12-13, 15 (Trial Test. of Gooch, June 23, 2014).

[31] *Id.* at 16-17.

[32] Id at 17-19; App. to Answering Br. at 23-26 (Trial Test. of Trooper Michale Maher, June 23, 2014).

[33] App. to Answering Br. at 18 (Trial Test. of Gooch, June 23, 2014).

members of the group were separately taken to Delaware State Police Troop 4 for processing.[34]

McDonald, Perez, and Brewer all pled guilty to multiple offenses and are serving lengthy jail terms.[35] Harper went to trial before a Sussex County Superior Court jury on charges of carjacking in the first degree, kidnapping in the first degree, and two counts of conspiracy in the second degree.[36] The jury returned a verdict on June 26, 2014 of guilty on all counts.[37] Harper was sentenced to twenty-five years at Level V incarceration, suspended after five years for six months Level IV work release, followed by two years of Level III probation for carjacking in the first degree; twenty-five years at Level V incarceration for kidnapping in the first degree; and two years at Level V incarceration, suspended for one year of Level III probation for each count of conspiracy.[38]

## III. ANALYSIS

Harper argues on appeal that the carjacking of Smith's car was a completed crime when McDonald and Perez took Smith's vehicle and put her in the trunk. The Superior Court therefore erred, according to Harper, when it denied his motion for judgment of acquittal for first degree carjacking because he cannot be

---

[34] App. to Opening Br. at 18-21 (Trial Test. of Schlimer, June 23, 2014).
[35] *See State v. Brewer* (ID#1303016994) (seven year prison term); *State vs. McDonald* (ID#1304002931) (sixteen year prison term); *State v. Perez* (ID#1304002943) (sixteen year prison term).
[36] *Id.* at 1, 5-6 (Superior Court Docket).
[37] App. to Opening Br. at 6 (Superior Court Docket).
[38] Sentencing Order, *State v. Harper*, No. 1303016992 (Del. Super. Ct. July 25, 2014).

7

convicted of participating in an already completed crime. Harper also claims that the Superior Court erred in denying his motion for judgment of acquittal for kidnapping in the first degree, because that charge was predicated on his commission of the crime of carjacking in the first degree.[39]

The State argues in response that the crime of carjacking continues as long as the victim remains a hostage in the vehicle. Because the question has not been addressed in Delaware, the State points to a number of federal cases interpreting the federal carjacking statute, 18 U.S.C. § 2119, which find carjacking a continuing crime. The State also cites this Court's statement in *Dennis v. State*[40] that carjacking is a crime against the person.[41] As long as the victim remains a hostage in the vehicle, the State reasons, the crime against the person continues. The State also contends that, if Harper's conviction for carjacking is proper, then his conviction for kidnapping was also proper.

We review the Superior Court's legal determination that carjacking is a continuing crime *de novo*.[42] We review *de novo* the Superior Court's denial of

---

[39] Harper also argues in the alternative that if carjacking is a continuous crime while the victim remains abducted, he cannot be convicted of kidnapping in the first degree because Smith's restraint was incidental to and not independent of the carjacking. Because of our disposition of the first two issues, we need not reach this issue.

[40] 41 A.3d 391 (Del. 2012).

[41] *Dennis v. State*, 41 A.3d 391, 394 (Del. 2012).

[42] *Id.* at 393 ("We review *de novo* the Superior Court's jury instructions and its interpretation of a statute."); *Burrell v. State*, 953 A.2d 957, 960 (Del. 2008) ("[T]his Court must review the correctness of the trial judge's application of the law to [the trial court's] factual findings. When a question of law is at issue, the standard of appellate review is *de novo*.").

8

Harper's motion for judgment of acquittal as to the carjacking and kidnapping charges to determine whether a rational trier of fact, viewing the evidence in the light most favorable to the State, could find the essential elements of the crimes beyond a reasonable doubt.[43] Harper was also convicted of two counts of second degree conspiracy. Although not raised on appeal, we conduct the same review, in the interests of justice, of the sufficiency of the evidence supporting Harper's two conspiracy convictions.[44]

## A. Carjacking Is Not A Continuing Crime

After reciting the elements of the crime of carjacking in the first degree under Delaware law, the trial judge instructed the jury that the "crime of carjacking may be continuous where a victim may be a hostage until a victim is released from the motor vehicle."[45] The court also instructed the jury that it should find Harper guilty of carjacking in the first degree if they found beyond a reasonable doubt that he "as a principal or accomplice acted in such a manner as to satisfy all of the elements" of the crime of carjacking in the first degree.[46] An accomplice "is guilty of an offense committed by another person when intending to promote or facilitate

---

[43] *Bethard v. State*, 28 A.3d 395, 397-98 (Del. 2011).
[44] Del. Sup. Ct. R. 8.
[45] App. to Answering Br. at 104 (Jury Instructions).
[46] *Id.*

9

the commission of the offense the accomplice aids or attempts to aid the other person in committing it."[47]

Harper's argument on appeal focuses on what another court has described as the temporal limits of the crime.[48] At common law, there was a category of criminal liability, accessory after the fact, which applied to individuals who assisted criminals after they committed their criminal acts.[49] Though federal criminal law retains accessory after the fact liability,[50] Delaware does not.[51] Under Delaware law, a defendant like Harper cannot be convicted as a principal or accomplice of a completed crime.

McDonald, Perez, and Brewer picked Harper up in Smith's car after the car was taken from her, and after she was put in the trunk. If the crime of carjacking was complete when McDonald and Perez took the car from Smith and put her in the trunk, then Harper cannot be guilty of carjacking. If, however, the crime continued as long as Smith was a hostage in the trunk of her car, then Harper was a

---

[47] *Brooks v. State*, 40 A.3d 346, 350 n. 14 (quoting *Erskine v. State*, 4 A.3d 391, 394 (Del. 2010) (citing 11 *Del. C.* § 271(b))).

[48] *United States v. Figueroa-Cartegena*, 612 F.3d 69, 73 (1st Cir. 2010) (citing *Ramirez-Burgos v. United States*, 313 F.3d 23, 30 n. 9 (1st Cir. 2002)).

[49] *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189 (2007).

[50] *See Figueroa-Cartegena*, 612 F.3d at 73 ("Congress chose to retain the . . . category – accessory after the fact – as a separate class whose 'offense is distinct and is differently punished.'") (quoting *Bollenbach v. United States*, 326 U.S. 607, 611 (1946)).

[51] 58 Del. Laws, ch. 497, § 1 (1972) (repealing prior criminal code, 11 *Del C.* § 103, defining accessories after the fact and prescribing punishment for the crime).

participant while the crime was in progress and his conviction for carjacking was proper.

To determine whether the carjacking of Smith's Buick was complete or continuing when Harper joined the teenagers, we look for the General Assembly's intent in enacting the statute.[52] In Delaware, a criminal offense is committed "either when every element occurs, or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated."[53] Thus, for the temporal span of a crime to extend beyond the moment at which every one of its elements has occurred, a legislative intent to prohibit a continuing course of conduct must "plainly appear." This principle is consistent with the presumption against interpreting a criminal statute as a continuing offense. A criminal statute should not be interpreted as a continuing crime, "unless the explicit language of the . . . statute compels such a conclusion, or the nature of the crime involved is such that [the legislature] must assuredly have intended that it be treated as a continuing one."[54]

---

[52] *See Patrick v. State*, 922 A.2d 415, 2007 WL 773387, at *3 (Del. Mar. 15, 2007) (Table) ("The issue of whether or not the crime of resisting arrest is a continuing offense is one of legislative intent."); *see also Buchanan v. State*, 981 A.2d 1098, 1102 (Del. 2009) (describing the status of resisting arrest as a continuing crime in Delaware based on the intent of the General Assembly).
[53] 11 *Del. C.* § 205(f).
[54] *Toussie v. United States*, 397 U.S. 112, 115 (1970); *see also Burton v. State*, 925 A.2d 503, 2007 WL 1417286, at *3 (Del. May 15, 2007) (Table) (discussing the presumption and following *Toussie* in applying it).

Against this backdrop we first consider whether a legislative intent to prohibit a continuing course of conduct plainly appears in the express language of the statute. The Delaware carjacking statute reads in relevant part:

(a) A person is guilty of carjacking in the first degree when the person knowingly and unlawfully takes possession or control of a motor vehicle from another person or from the immediate presence of another person by coercion, duress or otherwise without the permission of the other person, and:

. . .

(6) The person from whom possession or control of the vehicle is taken, or an occupant or passenger of such vehicle, is 62 years of age or older or 14 years of age or younger.

. . .

(c) It is no defense to a prosecution under this section that the offender did not physically drive or operate the motor vehicle, nor is it a defense under this section that the offender did not intend to permanently deprive the owner or another person of the use of the vehicle.

. . .

(f) This section is not a related or included offense of § 831 or § 832 of this title. Nothing in this section shall be deemed to preclude prosecution under any other provision of this Code.[55]

The express language of the statute does not support a legislative intent to prohibit a continuing course of conduct. The prohibited conduct is the taking of possession or control of the vehicle from the victim or from the immediate presence of the victim. The unlawful conduct is completed at a discrete moment in time. To take possession or control of a thing is to affect a transfer of possession

---

[55] 11 *Del. C.* § 836.

12

or control to oneself from another. Once possession or control is obtained, it may continue, but the taking of it occurs at a specific point in time.

Our interpretation is supported by definitions and common usage. In common usage, to "take" is "to get into one's hold or possession by voluntary action."[56] "Taking" is also a common law term of art that refers to "the act of 'securing dominion' over something."[57] In common usage, "possession" is "the act or fact of possessing," where to "possess" is "to have as belonging to one; own."[58] Black's Law Dictionary defines "possession" as "[t]he fact of having or holding property in one's power; the exercise of dominion over property."[59] "Control," in common usage, is "the act or power of controlling," where to "control" is "to exercise restraint or direction over; dominate; command."[60] To "control," as defined by Black's Law Dictionary, is "[t]o exercise power or influence over."[61]

Whether according to the common understanding of the terms or their legal usage, a victim of a carjacking who is a hostage in the vehicle is no longer in possession and control of the vehicle. Particularly if, as in this case, she is a

---

[56] RANDOM HOUSE UNABRIDGED DICTIONARY 1936 (2d ed. 1993).
[57] *Figueroa-Cartegena*, 612 F.3d at 78 (citing 3 Wayne R. LeFave, *Substantive Criminal Law* § 19.3(a) (2d ed. 2003)).
[58] RANDOM HOUSE UNABRIDGED DICTIONARY at 1509.
[59] BLACK'S LAW DICTIONARY 1281 (9th ed. 2009).
[60] RANDOM HOUSE UNABRIDGED DICTIONARY at 442.
[61] BLACK'S LAW DICTIONARY at 378.

hostage in the trunk, she is no longer exercising direction, dominion, or power over the vehicle. In other words, possession and control has been taken from her.

This common sense understanding of the taking of possession or control — a transfer that is completed at a discrete point in time, irrespective of how long the possession or control in the taker continues from that point — is consistent with the traditional understanding at common law. At common law, "'[t]aking' was distinct from 'carrying away' (or 'asportation'), which was a separate element of [robbery and larceny] and did not occur until after the property had been 'taken.'"[62] Therefore, at common law "a taking was complete once the defendant had secured initial control over the property in question."[63]

We next consider whether the nature of the crime of carjacking is such that the General Assembly must have intended that it be treated as continuing. The General Assembly codified the current language making carjacking a criminal offense in 1999.[64] The synopsis to the bill, Senate Bill 12, emphasized the creation of an offense separate and distinct from related offenses and distinctly punishable. Carjacking was previously a subdivision of both assault and reckless endangering. The synopsis states that "this Act defines carjacking, assault and reckless endangering as separate offenses, and it creates a new and separate offense of

---

[62] *Figueroa-Cartegena*, 612 F.3d at 78 (citing 3 Charles E. Torcia, *Wharton's Criminal Law* § 357 (15th ed. 2009)).
[63] *Id.*
[64] 72 Del. Laws, ch. 34, § 2 (1999).

carjacking. Carjacking would also be a separate and distinct crime from robbery."[65] The synopsis goes on to stress that the "Act also includes specific provisions stating that carjacking and related offenses do not merge,"[66] ensuring that a defendant can be sentenced both for carjacking and separately for related offenses.[67]

The fact that the General Assembly intended carjacking to be an offense separate and distinct from related offenses and distinctly punishable suggests we should not define the temporal limits of the crime in terms of the victim's status as a hostage. Just as the synopsis to Senate Bill 12 made it clear that carjacking is a separate and distinct offense from assault, reckless endangering, and robbery, and just as this Court determined in *Dennis* that it is separate and distinct from theft of a motor vehicle, so too it should be understood to be separate and distinct from kidnapping and unlawful imprisonment. The crime against the person in a carjacking is not the taking of the person hostage. In other words, it is every bit a carjacking if the perpetrator throws the victim from the car and drives away.

---

[65] *Id.*

[66] *Id.*

[67] The synopsis referenced *Cook v. State*, 600 A.2d 352 (Del. 1991), in which this Court addressed the question whether principles of double jeopardy precluded the sentencing of a defendant for vehicular assault in the first degree and the lesser included offense of driving under the influence in a single prosecution. We concluded they did not because the General Assembly had expressed a clear intention to permit simultaneous prosecution for vehicular assault in the first degree and under any other section of the Delaware Code. *Cook*, 600 A.2d at 353.

15

Carjacking is a crime against the person because it involves a taking of possession or control "from [the] person or from the immediate presence of [the] person."[68]

In the event a carjacker does take the victim hostage, the carjacker commits separate and distinct offenses – kidnapping or unlawful imprisonment. Smith might have been the victim of a continuing crime, but that continuing crime was not carjacking; it was the distinct crimes of kidnapping or unlawful imprisonment, punishable under 11 *Del. C.* §§ 781-783A.

The State urges this Court to follow federal precedent interpreting the federal carjacking statute, 18 U.S.C. § 2119, and to adopt the so-called "abduction rule" where the crime of carjacking continues as long as the car owner is held hostage by the perpetrators. The State's argument is unpersuasive for several reasons.

First, given the language difference between the two statutes, the federal statute is not directly analogous. The Delaware statute prohibits "tak[ing] *possession or control of* a motor vehicle from another person or from the immediate presence of another person."[69] In contrast, the federal statute prohibits "tak[ing] a motor vehicle . . . from the person or presence of another . . . ."[70] Under the federal statute, the carjacking is not completed until the victim is

---

[68] *Dennis*, 41 A.3d at 394.

[69] 11 *Del. C.* § 836 (emphasis added).

[70] 18 U.S.C. § 2119.

16

separated from the car.    But in Delaware, the carjacking is complete once

*possession or control of* the car is taken from the victim.  The victim need not be

separated from the car to complete the crime.

This distinction, which is at the foundation of the abduction rule, was

adopted by the United States Court of Appeals for the Ninth Circuit in *United

States v. Hicks*.[71]    The Ninth Circuit concluded, based on the language of the

federal carjacking statute, that the crime of carjacking was not a completed crime

until the victim is separated from the vehicle.  In other words, under the federal

carjacking statute, the car has not been "taken" from the victim until separation

occurs.[72]  The Delaware statute does not contain such a limitation.

Second, the federal precedent interpreting the federal carjacking statute

provides little support for the State's position.  The leading case relied upon by the

State, *United States v. Figueroa-Cartegena,*[73] adopted the "abduction rule" only

because the panel felt constrained by precedent to do so.  Two of the three judges

expressed strong reservations about the court's earlier precedents.[74]    They cast

---

[71] 103 F.3d 837 (9th Cir. 1996).

[72] *United States v. Hicks*, 103 F.3d 837, 843 n. 4 (9th Cir. 1996).  The Ninth Circuit also found for purposes of separation from the vehicle that it did not matter whether the victims were in the front seat or the trunk of the car.  *Id*.

[73] 612 F.3d 69 (1st Cir. 2010).

[74] *Id*. at 80-82 (Lipez, J., writing for the majority, but not joined by Baldock, J.) (suggesting that the abduction rule was originally adopted on an "erroneous premise"); *id.* at 89 (Torruello, J., dissenting) ("[A]s the majority explains, the abduction rule was grounded on a case that does not actually support it . . . . We appear to have mechanically repeated this phrase in subsequent opinions without explanation.").

17

doubt on the logic of *Hicks*, even as applied to the distinct language of the federal statute, and questioned whether the abduction rule should continue to be followed by the court.[75]

In the present case, McDonald and Perez completed the carjacking when they took possession and control of Smith's Buick from her without her permission. Because Harper joined the teenagers after the crime of carjacking was completed, we reverse Harper's conviction for carjacking in the first degree.

## B. The Evidence Was Insufficient to Convict Harper of Kidnapping

Delaware's kidnapping statute provides that a person is guilty of kidnapping in the first degree:

> [W]hen the person unlawfully restrains another person with any of the following purposes: (1) To hold the victim for ransom or reward; or (2) To use the victim as a shield or hostage; or (3) *To facilitate the commission of any felony or flight thereafter*; or (4) To inflict physical injury upon the victim, or to violate or abuse the victim sexually; or (5) To terrorize the victim or a third person; or (6) To take or entice any child less than 18 years of age from the custody of the child's parent, guardian or lawful custodian; and the actor does not voluntarily release the victim alive, unharmed and in a safe place prior to trial.[76]

---

[75] *Id*. at 77-80 (Lipez, J., writing for the majority, but not joined by Baldock, J.) (arguing that neither the language of the federal statute nor the nature of the offense support reading the statute as creating a continuing crime); *id*. at 90 (Torruello, J., dissenting) ("I do not see where the abduction rule is in any way supported by the plain language of the statute, whether by a plain commonsensical definition of the word 'take' – 'to get into one's hands or into one's possession, power or control by force or stratagem' – or as derived from the common law of robbery and larceny."). Two of the three judges directly questioned whether a taking continues until the victim is released, and believed that even under the broadest reading of the word taking, "a taking ends once the victim has been subdued and the defendant's control over the vehicle is 'complete.'" *Id*. at 79.

[76] 11 *Del. C.* § 783A (emphasis added).

At Harper's trial, the judge instructed the jury that they were to find the "with any of the following purposes" intent element of the statute satisfied if the jury found "the restraint was with the intent to facilitate the commission of any felony or flight thereafter upon Margaret Smith, here alleged to be carjacking in the first degree or flight therefrom."[77]

Harper argues on appeal that there was insufficient evidence to convict him of kidnapping in the first degree because his involvement in the restraint of Smith was not done to facilitate the commission of the carjacking or flight thereafter. Having concluded that the carjacking was complete by the time Harper's involvement in the restraint of Smith commenced, we agree that Harper's later involvement in the restraint of Smith could not have been for the purpose of facilitating the commission of the felony of carjacking in the first degree. We must, however, still consider whether there was sufficient evidence from which the jury could have found that his involvement in the restraint of Smith was for the purpose of facilitating "flight thereafter" from the carjacking by McDonald and Perez.

In *Williamson v. State*,[78] we interpreted language regarding flight from a predicate felony in the felony murder statute, 11 *Del. C.* § 636(a)(2). The statute

---

[77] App. to Answering Br. at 106 (Jury Instructions).
[78] 669 A.2d 95 (Del 1995).

19

provided at the time that a defendant could be convicted of felony murder in the first degree if "[i]n the course of and in furtherance of the commission or attempted commission of a felony or immediate flight therefrom, he recklessly causes the death of another person."[79]  We found the term "flight" to mean "an act or instance of fleeing or running away."[80]  The fleeing or running away is from "the scene of the predicate felony."[81]  We have also determined that to "facilitate" means to "move" that which is being facilitated "forward."[82]

In this case, the scene of the predicate felony is the last location in or around Milford where Smith drove McDonald and Perez, and McDonald and Perez took control of Smith's Buick and put Smith in the trunk.  The question thus becomes whether a rational trier of fact, viewing the evidence in the light most favorable to the State, could find Harper's involvement in restraining Smith was for the purpose of moving forward or making easier an act of fleeing or running away on the part of McDonald and Perez from the place where they carjacked Smith's car.

We conclude that the record is completely bereft of evidence to support such a finding.  When Harper was first picked up by the other teenagers in Smith's Buick, McDonald and Perez were no longer near the place where they carjacked Smith's car.  There is no evidence that, from the time McDonald, Perez, and

---

[79] *Williamson v. State*, 669 A.2d 95, 97 (Del. 1995).
[80] *Id.* at 98.
[81] *Id.*
[82] *Williams v. State*, 818 A.2d 906, 913 (Del. 2003).

Brewer picked up Harper from his home, McDonald, Perez or any of the teenagers were concerned with fleeing or running away. They spent hours driving around in public and parked in a public place at a park, listening to music Smith described as "up loud."[83] They checked into a hotel, but not for the purpose of hiding either themselves or the Buick. They made regular runs in the Buick for marijuana. Even after releasing Smith, the teenagers continued to drive around in public in Smith's car.

The evidence was insufficient to establish that Harper restrained Smith for the purpose of facilitating the commission of McDonald and Perez's carjacking or their flight thereafter. We therefore reverse Harper's conviction for kidnapping in the first degree.

### C. The Evidence Was Insufficient to Convict Harper of Conspiracy

A person is guilty of conspiracy in the second degree when:

[I]ntending to promote or facilitate the commission of a felony, the person:

> (1) Agrees with another person or persons that they or 1 or more of them will engage in conduct constituting the felony or an attempt or solicitation to commit the felony; or

> (2) Agrees to aid another person or persons in the planning or commission of the felony or an attempt or solicitation to commit the felony; and the person or another person with whom the

---

[83] App. to Answering Br. at 44 (Trial Test. of Smith, June 25, 2014).

person conspired commits an overt act in pursuance of the conspiracy.[84]

Harper was charged with conspiring to commit the crimes of carjacking in the first degree and kidnapping in the first degree.[85] For Harper to be guilty of conspiracy to commit those crimes, there must have been an agreement in each instance on Harper's part with at least one co-conspirator, and either Harper or a co-conspirator must have committed one overt act in furtherance of each crime.[86]

With respect to conspiracy to commit carjacking in the first degree, there is no evidence that Harper was aware of any plans on the part of McDonald and Perez to carjack Smith's vehicle before the carjacking was complete, let alone any evidence that Harper was in agreement with such plans. Evidence of the requisite agreement is lacking as well with respect to conspiracy to commit kidnapping in the first degree. Harper could not have agreed that Smith should be restrained for the purpose of facilitating the commission of the carjacking, because the carjacking was complete before he was aware of either the carjacking or the girls' restraint of Smith. Harper could have conceivably agreed that Smith should be restrained to facilitate the flight of McDonald and Perez from the carjacking, but, as we have already discussed, the record does not support a finding that Harper and the other

---

[84] 11 *Del. C.* § 512.
[85] Indictment, *State v. Harper*, No. 1303016992 (Del. Super. Ct. Apr. 8, 2013).
[86] *Harris v. State*, 968 A.2d 32, 36 (Del. 2009).

22

teenagers acted with that particular shared purpose. Harper's conspiracy convictions must also be reversed.

## IV.   CONCLUSION

For the foregoing reasons, we reverse Harper's convictions. We remand to the Superior Court for such further proceedings as are not inconsistent with this opinion.