Arthur P. MILLIGAN, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 98, 1999.

Supreme Court of Delaware.

Submitted: June 6, 2000.
Decided: July 24, 2000.

Bernard J. O'Donnell, Assistant Public Defender, Wilmington, Delaware, for appellant.

John Williams, Deputy Attorney General, Delaware Department of Justice, Dover, Delaware, for appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND and HARTNETT, Justices and STEELE, Vice Chancellor,[1] constituting the Court en Banc.

PER CURIAM:

Arthur P. Milligan appeals from a Superior Court jury's verdict finding him guilty of four counts of unlawful sexual contact. The Court sentenced him to two years at Level V followed by six years of decreasing levels of supervision. In this appeal, Milligan argues that the jury instructions did not sufficiently limit the jury's consideration of evidence of later uncharged misconduct. According to Milligan, a jury instruction purporting to allow the jury to consider later uncharged bad acts must specifically refer to and expressly limit the scope of the jury's consideration to the specific purpose for which the evidence of later uncharged acts is admitted and the jury must be told that the evidence can not be considered for any other substantive purpose nor as an indication of a defendant's character.

We have carefully considered the briefs of the parties and their contentions in oral argument and have concluded that Milligan is correct. We find that the trial court's instruction allowed the jury to

1. Sitting by designation pursuant to *Del. Const.*, art. IV, § 12, and Supreme Court Rules 2 and 4(a).

draw impermissible inferences resulting in unfair prejudice. The instruction, therefore, constituted reversible error. Accordingly, the judgment is reversed and remanded for a new trial.

### Facts

On July 25, 1997, the primary complaining witness and her cousin came to visit Milligan at his apartment in New Castle County. Both the primary complaining witness and her cousin were spending the night at Milligan's apartment before leaving with him in the morning for a week long vacation in Ocean City, Maryland.

The primary complaining witness testified that on the evening of July 25, 1997 while she was sleeping in the living room, Milligan awakened her by touching her and requesting her to touch him. The contact she described constituted unlawful sexual contact.

The primary complaining witness did not report the described sexual contact until five days later after a similar incident in an Ocean City, Maryland motel room. During that incident, Milligan again awoke her and requested that she touch him. She described sexual contact similar to that which she experienced five days before in Delaware. A short time after the Ocean City incident she called her aunt in Delaware and reported the incident to her. After that conversation, she contacted Ocean City, Maryland police who arrested the defendant. When she returned to Delaware, she reported the earlier incident to the New Castle County police who arrested Milligan for the charges on which the Delaware Superior Court jury ultimately convicted him.

### Uncharged Misconduct Evidence

At trial, the State sought to introduce the later uncharged Maryland incident under Delaware Rule of Evidence 404(b).[2] The defendant objected to its admissibility on the grounds that the uncharged misconduct was not relevant and was unfairly prejudicial. The trial court made specific, clear findings on the record and concluded: (1) that the later uncharged offense was relevant in that it showed that the defendant had particular designs on "the victim" consistent with the defendant's motive, intent or plan to sexually contact "the victim;" (2) that the later Ocean City incident was "inextricably intertwined" with the earlier Delaware incident in that it provided an explanation for the "victim's" late reporting without which the jury could be misled or confused; and, (3) that the evidence could "corroborate the complaining witness's testimony about what happened in Delaware."

▬▬ The trial prosecutor forced prematurely a Getz v. State[3] analysis upon the trial judge on each of the three findings by insisting upon introducing evidence of the later uncharged Maryland incident in the State's opening and case-in-chief, rather than awaiting introduction of "late reporting" in Milligan's case. While the defense did acknowledge that "late reporting" would be made an issue in its case and would be mentioned in its opening, "late reporting" bore no reasonable relationship to an issue or ultimate fact to be proved in the State's case-in-chief. Therefore, the State had no basis to seek admission of the later bad acts to explain "late reporting" until rebuttal. Even then, there would be a basis only after Milligan had in fact introduced evidence of "late reporting" to support an alleged theory that the Delaware incident never occurred. Arguably, evidence of the later uncharged Maryland misconduct could have had a

---

**2.** D.R.E. 404(b) provides:

(b) Other crimes, wrongs or acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

**3.** Del.Supr., 538 A.2d 726 (1988).

devastating effect in rebuttal had Milligan raised late reporting in his case. The State's decision to seek admission of the later bad acts in its case-in-chief compelled the trial court to confront the difficult *Getz* analysis at the beginning of the trial.[4] Any conclusion that the "late reporting" theory was so "inextricably intertwined" with the later bad acts that evidence of those later bad acts had to be admitted in order to meet the "late reporting" defense related to the admissibility of rebuttal evidence and should not have been reached before the State's case-in-chief.

■ In order for the uncharged later Ocean City misconduct to be admissible to show motive, intent or plan in connection with the charged offenses, the trial court must satisfy the guidelines set forth by this Court in *Getz*.[5] It should be noted that we do not require that evidence of other bad acts be limited to the list of approved propositions in 404(b) but when a legitimate probative use may be made of the proffered evidence of other bad acts that use must be made known explicitly to the jury. Our holding, therefore, relates to the structure and substance of the charge and not to the trial judge's carefully enumerated findings and balancing of probative value versus unfair prejudice. Here, the defense objected to the final instruction on the ground that it allowed the jury to consider purposes beyond those for which the 404(b) evidence had been

specifically admitted. Because the 404(b) evidence can be admitted only for a limited purpose, *Getz* requires that the trial court limit the jury's consideration of the evidence to the explicit purpose for which the trial court admitted the uncharged misconduct.[6] We do not in any way suggest that the evidence of the later incident should have been admitted even in rebuttal. We hold, nevertheless, that the trial judge's final instruction failed to instruct the jury properly on the limited purpose for which the evidence of the later uncharged Ocean City incident could be considered by them even if it had been properly admitted in rebuttal under the *Getz* guidelines and D.R.E. 105.

**The Scope of the Limiting Instruction**

The trial court instructed the jury as follows concerning the purpose for which the later uncharged Ocean City misconduct could be considered:

> During the trial, the State introduced evidence of other bad acts of the defendant. As I explained during the trial, in certain instances evidence may be admitted for a particular purpose only and for no other purpose. The evidence of prior bad acts is governed by a rule of evidence that has the force and effect of statutory law. It reads, in pertinent part, as follows:
>
> Evidence of other crimes, wrongs or acts, is not admissible to prove the char-

---

4. The guidelines set forth are:
    (1) The evidence of other crimes must be material to an issue or ultimate fact in dispute in the case. If the State elects to present such evidence in its case-in-chief it must demonstrate the existence, or reasonable anticipation, of such a material issue.
    (2) The evidence of other crimes must be introduced for a purpose sanctioned by Rule 404(b) or any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition.
    (3) The other crimes must be proved by evidence which is "plain, clear and conclusive." *Renzi v. State*, Del.Supr., 320 A.2d 711, 712 (1974).

    (4) The other crimes must not be too remote in time from the charged offense.
    (5) The Court must balance the probative value of such evidence against its unfairly prejudicial effect, as required by D.R.E. 403.
    (6) Because such evidence is admitted for a limited purpose, the jury should be instructed concerning the purpose for its admission as required by D.R.E. 105. *Getz*, at 734.

5. A detailed explanation of the trial judge's role can be found in *Trump v. State*, Del. Supr., 753 A.2d 963, No. 534, 971–72 (2000).

6. *Id.*

acter of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

If you believe any evidence concerning uncharged bad acts by defendant, and in that regard it is entirely up to the jury as to whether the evidence is believable, you may not use that evidence as proof that defendant is a bad person and therefore probably committed the offense alleged in the indictment.

You are instructed your use of any such evidence presented on other crimes or bad acts only if you believe it and only as it relates to the proof of motive, intent, or plan, or *another proper purpose*. (emphasis added)

The State contends that the trial judge satisfied 404(b) when he instructed the jury on four separate occasions throughout trial that they could not consider the uncharged Ocean City misconduct as evidence of Milligan's character.[7] Additionally, the State argues that the final instruction's non-specific reference to "another proper purpose" was mere surplusage that constituted harmless error.

■ We disagree and find that the trial court's cryptic reference to "another proper purpose" was, as a matter of law, reversible error in this context. While the trial judge began the final instruction on this critical issue by stating that the evidence of other bad acts may be "admitted for a particular purpose and for no other purpose," he followed that language with a litany of possibilities that included purposes totally unrelated to his careful, particularized findings purporting to justify admission which he articulated earlier in the record. Further, he ended the final

instruction with language suggesting that the jury could consider "another proper purpose" in addition to the limited purposes for which he admitted the evidence in the first instance. It is important to note that it is irrelevant how many cautionary instructions were given throughout the trial because the final jury instruction failed to specify the limited basis for which the jury could consider the 404(b) evidence. The trial court's final instruction to the jury allowed them to consider the Ocean City incident for "another proper purpose," without specificity, and encouraged consideration, without guidance, of any purpose contemplated by 404(b) or as the jury might presume to find proper. The trial court's failure to limit the jury's consideration of the evidence allowed them to speculate well beyond the very limited findings the trial court made in its decision to admit the evidence in the first instance. A careful reading of this Court's opinion approving the trial court's instruction in *Pope v. State*,[8] would reveal the necessary elements of a proper charge. First, the jury should be told the specific purpose or purposes for which the evidence may be used consistent with the record and the findings of the trial court supporting admissibility of the "other crimes" or uncharged bad acts. Second, the jury must be told, as in *Pope*, that the evidence may not be considered for *any* other purpose. Mere recitation of the general language found in 404(b), however accurate as a statement of law in the abstract, does not provide an adequate safeguard against an unfairly prejudicial effect. The final instruction should explain in plain and direct language the result of the trial court's balancing test of probative value against unfairly prejudicial effect and limit the jury's consideration of the evidence accordingly. This was precisely what the trial

---

7. The record reflects limiting instructions were given by the trial court (1) after State's opening statement; (2) after the trial testimony of the primary prosecution witness; (3) after the trial testimony of the Ocean City

police officer; and (4) as part of the final jury instruction.

8. Del.Supr., 632 A.2d 73, 78 (1993).

court did successfully in *Pope.*[9] The final instruction given over Milligan's objection failed to specify clearly the limited purpose for which the uncharged misconduct could be considered.

█ A trial court's jury instruction can be a basis for reversal if the "deficiency undermined the ability of the jury to 'intelligently perform its duty returning a verdict.'"[10] It is clear in this case that the challenged jury instruction was too broad in scope thereby permitting the jury to speculate beyond the parameters circumscribed by this Court in *Pope.* We find that the deficiency in the jury charge was misleading, improper, and undermined the ability of the jury to accurately and intelligently return an appropriate verdict free of unfairly prejudicial effect.[11]

### Conclusion

Accordingly, the judgment of the Superior Court is reversed and remanded for a new trial.

**9.** *See supra* note 7.

**10.** *Floray v. State,* Del.Supr., 720 A.2d 1132, 1137 (1998) (citations omitted).

**11.** *See id.* at 1138.