**Fernando S. JOYNES, Defendant–Below, Appellant,**

v.

**STATE of Delaware, Plaintiff–Below, Appellee.**

No. 492, 2001.

Supreme Court of Delaware.

Submitted: March 5, 2002.
Decided: May 20, 2002.

---

4. Del.Code Ann. tit. 10, § 8805(a) (1999).

5. *See* Del.Code Ann. tit. 10, § 8805 (1999).

Ralph David Wilkinson, IV, Public Defender's Office, Wilmington, Delaware, for appellant.

John Williams, Department of Justice, Dover, Delaware, for appellee.

Before VEASEY, Chief Justice, HOLLAND and BERGER, Justices.

HOLLAND, Justice:

This is an appeal from the Superior Court. Following a jury trial, the defendant-appellant, Fernando S. Joynes ("Joynes"), was found guilty of Possession of a Deadly Weapon During the Commission of a Felony, Aggravated Menacing and Reckless Endangering in the Second Degree. Joynes was sentenced to five years at Level V, two years of which are mandatory, three years of which are suspended for one year at Level III and two years at Level II. This is Joynes' direct appeal.

Joynes has raised two issues on appeal. Both of those claims relate to evidentiary rulings by the trial judge. We have concluded that both of the evidentiary rulings were correct. Therefore, the judgments of the Superior Court are affirmed.

### Facts

On September 25, 2000, David Morton ("Morton"), Brian Haxton ("Haxton") and Joynes were students in Gloria Hardesty Burton's ("Hardesty") high school home economics class. The three students were assigned to the same cooking team. Mor-

ton served as lead chef, Haxton as assistant chef and Joynes was responsible for kitchen cleanup. When Morton asked Joynes to clean the dishes, Joynes responded by holding an eight-inch knife against Morton's neck stating that he didn't like him and would cut him if Morton pushed him about cleaning up the kitchen.

The next day, Joynes was composing a rap song during Hardesty's home economics class. Hardesty confiscated the written rap song from Joynes. The song was entitled "What I deal Wit." Shortly thereafter, Hardesty observed Joynes holding an apple corer behind Morton's head. Hardesty sent Joynes to the principal's office. Morton then told Hardesty about the knife incident that had occurred the previous day.

With regard to the knife incident, Joynes was indicted with one count of Possession of a Deadly Weapon During the Commission of a Felony, one count of Reckless Endangering in the First Degree and one count of Aggravated Menacing. Prior to trial, a hearing was held on Joynes' motions *in limine* to exclude from evidence testimony related to the subsequent apple corer incident and the rap song. The Superior Court denied both of those motions.

At trial, the State introduced the rap song and Hardesty's testimony relating to the apple corer incident during its case-in-chief. Joynes testified at trial in his own defense. He denied threatening Morton with the knife and claimed that he was only cleaning it. Joynes also denied threatening Morton with the apple corer.

### Subsequent Bad Act

Joynes' initial argument is that the trial judge abused his discretion by allowing the

State to introduce evidence to the jury regarding the alleged apple corer incident. Joynes divided this initial argument into three subsections. First, Joynes alleges that testimony regarding the apple corer incident violated Delaware Uniform Rule of Evidence ("D.R.E.") 404(b) by presenting other bad acts to prove the truth of the underlying offense. According to Joynes, the State failed to demonstrate why any of the exceptions contained in D.R.E. 404(b) would justify evidence being presented to the jury concerning the apple corer incident. Second, Joynes contends that, even if this Court concludes that a D.R.E. 404(b) exception would permit its introduction, evidence regarding the apple corer incident was more unfairly prejudicial to him than of probative value to the State. Therefore, Joynes submits it should have been excluded in accordance with D.R.E. 403. Third, Joynes alleges that the trial judge's decision to allow the State to introduce evidence of the apple corer incident was premature because it was presented during the State's case-in-chief and was not relevant to a material element of the charged offenses.

D.R.E. 404(b) permits the State to introduce evidence of other crimes, wrongs or acts for specific limited purposes. One of those limited purposes is to prove the defendant's intent to commit a charged offense. Although the other crimes or bad acts usually occur prior to the charged offense, this Court has held that evidence of *subsequent* bad acts may be admissible for a material purpose.[1]

■ If evidence of either a prior or subsequent bad act is offered for a purpose permitted by D.R.E. 404(b), the trial judge must engage in the analysis set forth by this Court's holding in *Getz v. State:*

**1.** *Getz v. State,* 538 A.2d 726, 730 n. 3 (Del. 1988).

(1) The evidence of other crimes must be material to an issue or ultimate fact in dispute in the case. If the State elects to present such evidence in its case-in-chief it must demonstrate the existence, or reasonable anticipation, of such a material issue.

(2) The evidence of other crimes must be introduced for a purpose sanctioned by [D.R.E.] 404(b) or any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition.

(3) The other crimes must be proved by evidence which is "plain, clear and conclusive."

(4) The other crimes must not be too remote in time from the charged offense.

(5) The Court must balance the probative value of such evidence against its unfairly prejudicial effect, as required by D.R.E. 403.

(6) Because such evidence is admitted for a limited purpose, the jury should be instructed concerning the purpose for its admission as required by D.R.E. 105.[2]

[7, 8] At Joynes' trial, the State sought to introduce evidence of the subsequent incident with the apple corer during its case-in-chief. Accordingly, the State was required to demonstrate that evidence was independently relevant to an element of the State's *prima facie* case, e.g., knowledge or intent.[3] The record reflects that the State offered evidence of the subsequent incident with the apple corer for a purpose permitted by D.R.E. 404(b): to prove Joynes' intention with regard to the charged offense involving the knife. As such, the evidence was both material and introduced for a permissible purpose thereby satisfying the first two prongs of *Getz*.[4] The third prong of *Getz* is met since the eyewitness testimony of Hardesty is plain, clear and conclusive. The fourth prong of *Getz* is met because the apple corer incident is not too remote in time, since it occurred within a day of the charged conduct. Finally, the last two prongs are satisfied since the trial judge performed the D.R.E. 403 balancing test and gave a proper limiting instruction.

The trial judge properly held the other misconduct evidence involving an apple corer incident the day after Joynes allegedly threatened Morton with a knife was admissible under D.R.E. 404(b) to prove Joynes' intent during the knife incident. The trial judge then correctly performed the analysis under *Getz*[5] before admitting the evidence. There was no abuse of discretion in the trial court's evidentiary ruling in this regard and Joynes' jury did receive a proper limiting instruction concerning the purpose for which the other misconduct evidence involving the apple corer was admitted.

### *Rap Song*

■ Joynes' final argument on appeal is that the trial judge abused his discretion in admitting the rap song into evidence. Joynes also divided this argument into three subsections. First, Joynes alleges that evidence of the song "What I deal Wit" was more unfairly prejudicial to him than probative to the State's case and, therefore, prohibited its admission under D.R.E. 403. Joynes submits that if only isolated portions of the rap song were

2. *Id.* at 734 (citations omitted).

3. *Taylor v. State,* 777 A.2d 759, 766 (Del. 2001); *Milligan v. State,* 761 A.2d 6, 8–9 (Del.2000).

4. *Milligan v. State,* 761 A.2d at 9; *Bright v. State,* 740 A.2d 927, 932–33 (Del.1999).

5. *Getz v. State,* 538 A.2d at 734.

introduced into evidence it would be misleading because it would appear the song was a plan to commit the charged act. By introducing the entire rap song, however, Joynes argues that it unfairly conveyed to the jury Joynes' general sense of anger or frustration. Second, Joynes contends that the rap song "What I deal Wit" was inadmissible under D.R.E. 404(a) because the contents of the song led the jury to conclude that Joynes had bad character traits and acted in conformity with those traits by presenting to the jury evidence of Joynes' character to show that he acted in conformity therewith on a particular occasion. Third, Joynes alleges that evidence of the rap song "What I deal Wit" should have been excluded because it was not relevant to whether Joynes committed the crimes for which he was charged involving the knife and, therefore, admission of the song into evidence violated D.R.E. 402.

The Superior Court did not abuse its discretion in denying the defense's pretrial motion *in limine* to exclude from evidence a rap song being composed by Joynes the day after he threatened Morton with a knife at school. Writing a rap song is not a bad act. The song lyrics, however, stated that the complaining witness Morton was on Joynes' "hit list" and that Joynes was proposing to put the heads of his enemies on a shelf. The rap song confiscated by Joynes' high school home economics teacher was evidence material to determining his intent or state of mind in the earlier knife incident.[6] The record reflects that the trial judge also properly admitted the rap song into evidence after engaging in the entire analysis required pursuant to this Court's holding in *Getz*.[7]

### Conclusion

The judgments of the Superior Court are affirmed.

**6.** *See Bright v. State,* 740 A.2d 927, 932–33 (Del.1999).

**7.** *Getz v. State,* 538 A.2d 726, 734 (Del.1988).