# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | | |
|---|---|---|---|
| STATE OF DELAWARE | ) | | |
| | ) | | |
| v. | ) | I.D. Nos. | 2410011201A&B |
| | ) | | 2410009458 |
| JHASIR GEORGE, | ) | | |
| | ) | | |
| Defendant. | ) | | |

Submitted: June 25, 2025
Decided: July 25, 2025

## <u>MEMORANDUM OPINION AND ORDER</u>

*Upon Defendant's Motion To Sever Offenses*

**DENIED**

*Upon Defendant's Motion In Limine To Exclude Evidence of Other Bad Acts*

**DENIED**

Kevin B. Smith, Deputy Attorney General, Department of Justice, Dover, Delaware, *Attorney for the State*.

Zachary A. George, Esquire, George & Vyas, LLC, Dover, Delaware, *Attorney for the Defendant*.

**Primos, J.**

Defendant Jhasir George is implicated in a shooting near a public park. Two weeks after the shooting, one of the guns was found in a backpack at Defendant's feet—apparently in the same vehicle that had dropped off the shooters. Defendant faces various charges, including one count of Carrying a Concealed Deadly Weapon ("CCDW") stemming from the gun's discovery. Defendant moves this Court to sever the CCDW charge, which would require that offense to be tried separately from the others. Defendant also moves this Court to exclude any evidence of the CCDW charge from the trial for the other alleged offenses, and to exclude any mention of the other charges from the CCDW trial. Defendant contends that the evidence would be inadmissible under Delaware Rule of Evidence 404(b), which bars the use of uncharged acts to prove a defendant's criminal propensity. The Court concludes that joinder of the offenses is proper, and that Defendant has failed to show a reasonable probability of substantial prejudice from such joinder. Therefore, the offenses should not be severed. Because the Court has determined that severance is not appropriate, Rule 404(b) is inapplicable: the CCDW charge will not be an uncharged offense for purposes of trial.

Accordingly, Defendant's motion to sever is **DENIED.** Defendant's motion *in limine* to exclude evidence is likewise **DENIED.**

## I. BACKGROUND[1]

### A. Procedural History

On July 3, 2024, a grand jury indicted Defendant on five counts: Possession of a Firearm During the Commission of a Felony; Possession, Purchase, Own, Or Control A Firearm By a Person Prohibited; and three counts of Reckless Endangering First Degree.[2] On March 3, 2025, Defendant was reindicted on seven counts: those previously indicted; one count of Conspiracy Second Degree; and one

---

[1] Citations in the form of "D.I. ___" refer to docket items in case number 2410011201A.
[2] D.I. 1.

count of Carrying a Concealed Deadly Weapon, Firearm.[3]

On April 16, 2025, Defendant filed a motion to sever the Person Prohibited charge, which the Court ultimately granted as unopposed.[4]  On April 17, 2025, Defendant filed an additional motion to sever the CCDW offense, along with a motion *in limine* to exclude any evidence of the CCDW offense in the separate trial for the other offenses and *vice versa*, citing Delaware Rule of Evidence 404(b).[5]  The State opposes the second motion to sever and the motion *in limine*.[6]

On May 30, 2025, the Court heard oral argument on Defendant's pending motions.  Argument was abbreviated because defense counsel contended that an evidentiary hearing was required to establish the operative facts before the Court could rule.  At a June 5, 2025, office conference, the Court informed the parties that an evidentiary hearing would not be required because, consistent with the Supreme Court's decision in *Wiest v. State*,[7] the Court could evaluate Defendant's motions in reliance on the State's proffer of evidence.  Following a second oral argument on June 25, 2025, the Court took the pending motions under advisement.

---

[3] D.I. 14.  The CCDW charge is classified under case number 2410009458.

[4] D.I. 19.

[5] Def.'s Second Mot. to Sever Offenses and Mot. *In Limine* to Exclude Evid. of Other Bad Acts (hereinafter "Defendant's Motion") (D.I. 20, 21).

[6] State's Response to Def.'s Second Mot. to Sever Offenses and Mot. *In Limine* to Exclude Evid. of Other Bad Acts (hereinafter "State's Response") (D.I. 27).

[7] 542 A.2d 1193 (Del. 1988).  The *Wiest* Court reversed the trial court not because it relied on the State's representations in deciding a motion to sever, but instead because when those representations were shown to be materially inaccurate the trial judge failed to order a new trial. *Id.* at 1196.  The Court explained that, "in the absence of the representations by the State . . . [the defendant's] motion to sever the trials would have been granted . . . .  When the representation that resulted in the single trial on both sets of charges failed to materialize, judicial economy was outweighed by the prejudice to [the defendant] and the motion for a new trial should have been granted." *Id.*  Thus, the Supreme Court has implicitly held that, rather than holding an evidentiary hearing to determine what evidence the State will present, the trial court may rely on the State's representations.  If these representations differ from the evidence presented at trial, the Court can consider whether prejudice to Defendant necessitates a new trial.

**B. Statement of Facts**

The State has proffered that it will present evidence of the following facts at trial. Consistent with its earlier ruling, the Court will credit the State's representations for purposes of the pending motions.

On the evening of July 3, 2024, surveillance cameras captured a shootout between the passengers of a gray Nissan Altima and at least two individuals on foot.[8] In the surveillance video, the passenger in the right rear seat of the Nissan is seen leaning out of the side window of the vehicle and firing at pursuers.[9] As those pursuers enter the frame, one is firing a pistol at the fleeing car.[10] The other individual, whom the State believes to be Defendant, is nearly struck by another car and then stashes what appears to be a handgun in the pocket of his hooded sweatshirt.[11]

Police recovered fourteen .45 caliber, six .40 caliber, and six 9-millimeter shell casings from the scene.[12] Forensic testing indicated that the rounds were fired from four separate firearms: one chambered in .45 caliber, one in .40 caliber, and two in 9-millimeter.[13]

The State also connected a tan Lexus RX SUV to the shooting.[14] Through review of surveillance, the SUV was observed an hour prior to the shooting and was also observed leaving the park where the shooting occurred immediately prior to the shooting.[15] Jashawn Moore, a probationer wearing a GPS tracking device, was at the scene of the shooting for thirty minutes before it took place but departed

---

[8] State's Response 2–4.
[9] *Id.* at 3.
[10] *Id.* at 3–4.
[11] *Id.*; *accord* D.I. 38 (edited surveillance video provided to the Court by the State with Defendant's assent).
[12] State's Response 2.
[13] *Id.*
[14] *Id.* at 5.
[15] *Id.*

4

approximately thirty seconds before it occurred.[16]  On July 17, 2024, police intercepted a tan Lexus RX SUV driven by Moore.[17]

When police approached the Lexus on July 17, they observed four passengers in addition to Moore, including Defendant.[18]  Defendant was seated in the left rear seat of the five-seat SUV.[19]  Upon removing the occupants, police discovered a black backpack in the Lexus's left rear footwell.[20]  The backpack contained a 9-millimeter Polymer80 handgun[21] without a serial number.[22]  Forensic testing revealed that two of the 9-millimeter casings recovered after the July 3 shooting were fired from that gun.[23]  Also inside the backpack was a bag of marijuana bearing Defendant's fingerprint.[24]

## II.    ANALYSIS

### A. Defendant's motion to sever fails because he has not made the requisite showing of prejudice from joinder.

#### 1.  Standard of review

Defendant's motion to sever is governed by Superior Court Criminal Rules 8(a) and 14.  Rule 8(a) provides that:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged are of the same or similar character or are based on the same act or

---

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] A Polymer80 is a "ghost gun" clone of the popular Glock series of handguns; due to the manner in which "ghost guns" are manufactured and assembled, they historically have been sold without serial numbers.  *See generally Bondi v. VanDerstock*, 145 S.Ct. 857 (2025) (holding that federal law requires firearms kits like and including the Polymer80 to bear serial numbers, contrary to their prior commercial practice); *see also id.* at 867 (noting that a Polymer80 handgun is sold as a kit containing all of the components necessary to assemble a fully-operational firearm with common tools); *id.* at 872–73 (describing the process of completing the frame of the weapon).

[22] State's Response 5.

[23] *Id.*

[24] *Id.*

5

transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

"The joinder of charges under . . . Rule 8(a) is designed to promote judicial economy by permitting the State to try related charges together."[25]

Rule 14 protects defendants' countervailing interests by permitting the Court to order separate trials "[i]f it appears that a defendant . . . is prejudiced by joinder."[26] "In determining whether joinder is proper, 'Superior Court Criminal Rules 8 and 14 must be read together.'"[27]  In other words, "[t]he rule of joinder is designed to promote judicial economy and efficiency, as long as the defendant's rights are not compromised."[28]

The critical question for severance under Rule 14 is whether Defendant has shown that there is a reasonable probability that he would be substantially prejudiced by joinder, or whether his claims of such prejudice are instead conclusory[29] or hypothetical.[30]  Delaware law recognizes that prejudice can arise when the jury might:  (1) "cumulate the evidence of the various crimes charged" to find guilt when it would not find such guilt had the crimes been considered separately; (2) infer a "general criminal disposition" from one of the crimes to convict the defendant of one of the others; or (3) when "the defendant might be subject to embarrassment or confusion in presenting different and separate defenses to different charges."[31]  In

---

[25] *Gibson v. State*, -- A.3d --, 2025 WL 1514413, at *7 (Del. May 28, 2025) (ORDER) (quoting *Caldwell v. State*, 780 A.2d 1037, 1054–55 (Del. 2001)).
[26] Super. Ct. Crim. R. 14.
[27] *Gibson*, 2025 WL 1514413, at *7 (quoting *Jackson v. State*, 990 A.2d 1281, 1286 (Del. 2009)).
[28] *Id.* (quoting *Jackson*, 990 A.2d at 1286).
[29] *Id.* at *9.
[30] *Skinner v. State*, 575 A.2d 1108, 1118 (Del. 1990) ("As a general rule, it may be said that [the trial court's] discretion has been abused by denial [of a motion to sever] when there is a reasonable probability that substantial prejudice may result from a joint trial.  The defendant has the burden of demonstrating such prejudice and mere hypothetical prejudice is not sufficient." (citing *Bates v. State*, 386 A.2d 1139, 1141–42 (Del. 1978))).
[31] *Ashley v. State*, 85 A.3d 81, 84–85 (Del. 2014) (citing *Wiest*, 542 A.2d at 1195).

evaluating prejudice, "[a]dmissibility [of evidence of each alleged crime] in separate trials [for the others] is not a requisite for joinder of charges[.]"[32]  However, a "'crucial' factor . . . is whether evidence of the one crime would be admissible in the trial of the other crime."[33]  "No prejudicial effect would result from the joinder of trials if the evidence pertaining to one crime would be admissible in the trial of another offense."[34]

### 2. Joinder is proper under Rule 8(a) because the July 3 and July 17 incidents are logically connected.

Rule 8(a) permits joinder when two offenses are "connected together." Charges may be connected either temporally or logically.[35]  The charges at issue in this case are, at minimum, logically connected.

The Supreme Court has approved joinder in circumstances closely analogous to these.  In *Rosser v. State*, the Court found that the trial court did not err by joining charges for a shooting and an armed robbery allegedly committed by the same defendant on the same evening.[36]  The Court noted that the two incidents were connected "because they happened close in time and close in location and involved interconnecting evidence, namely [the defendant's] SUV and the revolver used in both offenses."[37]  Although not as close in time as in *Rosser*, the two incidents in this case are also linked by an SUV and a gun.

Also instructive, in *Cannon v. State* the Supreme Court approved joinder of

---

[32] *Wood v. State*, 956 A.2d 1228, 1232 (Del. 2008); *Caldwell*, 780 A.2d at 1056, n.62 (citing *Skinner*, 575 A.2d at 1118).

[33] *Rosser v. State*, 135 A.3d 764, 2016 WL 1436604, at *2 (Del. Apr. 5, 2016) (ORDER) (quoting *Kemske v. State*, 918 A.2d 338, 2007 WL 3777, at *3 (Del. Jan. 2, 2007) (ORDER)); *accord Gibson*, 2025 WL 1514413, at *8 (quoting *Wiest*, 542 A.2d at 1195 n.3).

[34] *Justiniano v. State*, 185 A.3d 694, 2018 WL 2072816, at *3 (Del. May 2, 2018) (ORDER) (quoting *State v. Cooke*, 909 A.2d 596, 600 (Del. Super. 2006)).

[35] *Cannon v. State*, 994 A.2d 744, 2010 WL 1543852, at *3 (Del. Apr. 19, 2010) (ORDER) (citing *Wiest*, 542 A.2d at 1195).

[36] 2016 WL 1436604, at *2.

[37] *Id.* at *2.

charges for a home invasion resulting in a firearm theft with a charge for Possession of a Firearm by a Person Prohibited resulting from the discovery of a stolen gun in the defendant's home the following month.[38] The Court noted that there was a logical connection between the two events.[39] There is no less a connection between the weapon *used* in a crime and the crime itself (i.e., in this case) than there is between a weapon *stolen* in the course of a crime and the crime itself (i.e., in *Cannon*).

Under *Rosser* and *Cannon*, the July 3 and July 17 charges are sufficiently connected to be joined under Rule 8(a). The Court must therefore consider whether Rule 14 requires that the charges nonetheless be severed.

### 3. Rule 14 does not require severance, because, if the charges were tried separately, the evidence from the July 17 search would be admissible in the trial for the July 3 shooting.

#### i. Applying Rule 14 to this case requires the Court to consider the factors the Supreme Court established in *Getz v. State*.

As noted *supra*, one factor for the Court to consider is whether evidence of the July 3 offense would be admissible in a trial of the July 17 offense, and *vice-versa*. Defendant contends that this evidence is not reciprocally admissible, pointing to Delaware Rule of Evidence 404(b)'s prohibition on the use of other bad acts to prove that a defendant acted in conformity with his character on a given occasion (so-called "propensity evidence"). Although this prohibition is commonly referred to by the shorthand "prior bad acts," Rule 404(b) is applicable to evidence of acts occurring either prior to or subsequent to the charged offenses.[40]

---

[38] 2010 WL 1543852, at *3.

[39] *Id.*

[40] *See, e.g.*, *Deshields v. State*, 706 A.2d 502, 506 (Del. 1998) (applying Rule 404(b) to evidence of a similar crime committed the following month); *Torres v. State*, 979 A.2d 1087, 1099–1100 (Del. 2009) (applying Rule 404(b) to evidence of a crime "days after the charged offenses").

Rule 404 has a limited scope, however. "[E]vidence of a . . . bad act that is otherwise inadmissible may be admitted . . . if it is offered to prove something other than a propensity to commit the charged offense, such as 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,'"[41] and if its probative value for that purpose is not substantially outweighed by the danger of unfair prejudice.[42]

At the outset, the Court notes some doubts as to whether Rule 404(b) applies to this case at all. In *Strickland v. State*, the Supreme Court adopted a long line of federal precedent standing for the proposition that evidence "directly prov[ing] the charged offense" does not implicate Rule 404.[43] The State asserts that the July 17 evidence is "intrinsic" to the July 3 shooting.[44] The State's argument is, in essence, that because Defendant allegedly possessed the firearm on both July 3 and July 17, the State should be permitted to pursue the theory that he did so continuously. The State further avers that "[t]he continuous possession of the same gun does not amount to a series of crimes, but rather constitutes a single offense."[45]

The State's position, if accepted by this Court, would constitute an extension of *Strickland*, which concerned the possession of a firearm *during* a shooting, rather than two weeks later.[46] Ultimately, the Court need not determine whether such extension is warranted, nor whether the challenged evidence would be admissible

---

[41] *McCray v. State*, 15 A.3d 217, 2011 WL 497197, at *3 (Del. Feb. 11, 2011) (ORDER) (quoting D.R.E. 404(b)).

[42] *Campbell v. State*, 974 A.2d 156, 161–62 (Del. 2009) (citing *Getz v. State*, 538 A.2d 726, 730 (Del. 1988)).

[43] 328 A.3d 286, 295–96 (Del. 2024).

[44] State's Response 9–10.

[45] *Id.* at 10 (quoting *U.S. v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989)).

[46] *See Strickland*, 328 A.3d at 296 ("Here, it cannot be disputed that the video evidence depicting the discharge of the weapon from the car [the defendant] was driving was intrinsic to the crime charged. As [the defendant] himself concedes, it showed that the car's occupant possessed a firearm *and* ammunition. The evidence proved the very acts with which [the defendant] was charged and thus does not fall within the ambit of D.R.E. 404(b).").

on the related (but distinct) ground that it is "inextricably intertwined"[47] with the charged offense. For the reasons that follow, even assuming neither of these exceptions to Rule 404(b) applies, the CCDW charge need not be severed.

On the assumption that Rule 404(b) is applicable, the Delaware Supreme Court's opinion in *Getz v. State* guides this Court's analysis:[48]

(1)     The evidence of other crimes must be material to an issue of ultimate fact in dispute in the case. If the State elects to present such evidence in its case-in-chief[,] it must demonstrate the existence, or reasonable anticipation, of such a material issue.

(2)     The evidence of other crimes must be introduced for a purpose sanctioned by Rule 404(b) or any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition.

(3)     The other crimes must be proved by evidence which is "plain, clear[,] and conclusive."

(4)     The other crimes must not be too remote in time from the charged offense.

(5)     The Court must balance the probative value of such evidence against its unfairly prejudicial effect, as required by D.R.E. 403.

(6)     Because such evidence is admitted for a limited purpose, the jury should be instructed concerning the purpose for its admission as required by D.R.E. 105.[49]

Because reciprocal admissibility is not a prerequisite to joinder, the Court will primarily focus on the admissibility of the CCDW evidence from July 17 in a hypothetical separate trial for the July 3 shooting. In this posture, the Court's

---

[47] The "inextricably intertwined" doctrine applies to evidence which, if excluded, would "create a chronological and conceptual void in the state's presentation to the jury that would likely result in significant confusion." *Pope v. State*, 632 A.2d 73, 76 (Del. 1993) (internal quotation and citation omitted); *accord Taylor v. State*, 76 A.3d 791, 801 (Del. 2013) (evidence of gang affiliation was inextricably intertwined with defendant's violent crimes because omission would have precluded evidence of motive, making them seem like "random acts." (citing *Younger v. State*, 496 A.2d 546, 550 (Del. 1985))).

[48] *Joynes v. State*, 797 A.2d 673, 675 (Del. 2002).

[49] *Getz*, 538 A.2d at 734.

analysis treats these offenses as uncharged bad acts, even though, as noted in Section II.B. of this opinion, separate criminal acts tried in a single trial are not subject to exclusion under Rule 404(b).[50]

### ii. The first two *Getz* factors favor admissibility.

The State intends to offer the evidence from July 17 for the purpose of proving identity—i.e., that Defendant was one of the shooters on July 3.[51] Identity is one of the purposes specifically sanctioned by Rule 404, and it is at issue in this case.[52] Although the State procured video footage of the incident, it is at a distance, and the individual the State believes to be Defendant is wearing a head covering that conceals his features.[53] That Defendant was present and involved in the shooting is material to his guilt, and undoubtedly will be disputed at trial.

In *State v. Gibson*, the Supreme Court found that identity was a material fact in dispute in two shootings and that the first *Getz* factor favored the State because a common modus operandi, including the same type of gun and the use of rare frangible ammunition, tied them together.[54] Here, the Court is presented with a dispute of identity resolved not just by the same *type* of gun and ammunition, but the *same* gun. Following *Gibson*, both the first and second factors favor the State.[55]

---

[50] In other words, if the charges are properly joined, Rule 404(b) (and, thus, *Getz*) is not implicated, but an analysis of Rule 404(b) is a crucial test of the propriety of joinder and the necessity of severance. *See* Section II.A.1., *supra*.

[51] State's Response 12.

[52] *See Ward v. State*, 239 A.3d 389, 2020 WL 5785338, at *5 (Del. Sept. 28, 2020) (ORDER) (stating that the test for whether a fact is at issue under *Getz* is, in essence, one of relevance).

[53] D.I. 38.

[54] 2025 WL 1514413, at *9.

[55] The State asks the Court to analogize this case to *State v. Washington*, in which a Superior Court Commissioner concluded, and the Supreme Court ultimately agreed, that evidence that the defendant had accidentally discharged a fully automatic submachine gun some time before a murder using a similar weapon was admissible in a trial for the murder. 2016 WL 5407852 (Del. Super. Sept. 27, 2016) (Manning, C.), *aff'd*, 164 A.3d 56, 2017 WL 1573119 (Del. Apr. 28, 2017) (ORDER). The flaw in this analogy is that, in *Washington*, the Commissioner held that the challenged evidence was admissible because the accidental firing was not a "bad act" requiring *Getz* balancing. *Id.* at *5. Thus, despite its factual similarities to this case, *Washington* cannot be

### iii. The third *Getz* factor favors admissibility.

The evidence that Defendant possessed the firearm on July 17 is plain, clear, and conclusive. Although the Delaware Supreme Court has not fully explicated the standard for such evidence, it held in *Monroe v. State* that physical proximity to a robbery and flight therefrom were sufficient circumstantial evidence of involvement in the crime to clear the bar.[56] As in *Monroe,* Defendant's possession is supported by both proximity and additional corroborative evidence—his fingerprint on a bag of drugs in the same backpack. Defendant's fingerprint is at least as probative of Defendant's firearm possession as was the *Monroe* defendant's flight from the robbery in that case to involvement therein. Thus, if *Monroe* is any guide, the State will be able to "conclusively" prove Defendant's possession of the firearm with the evidence it has proffered.

An alternative analysis suggested by Delaware caselaw renders the same result. If the evidence of an uncharged crime would be sufficient to sustain a conviction for that crime by proof beyond a reasonable doubt, the evidence is plain, clear, and conclusive.[57] Here, the only element of CCDW relevant to the Court's analysis is possession. Thus, the third *Getz* factor is satisfied by the conclusion that the State's proffered evidence, if presented at trial, would be sufficient to prove that

---

taken as probative of the *Getz* analysis that the Commissioner declined to perform. Nor does *Washington* suggest that *Getz* is not implicated in this case. The jury in this case, unlike in *Washington*, will necessarily be informed that CCDW is a crime—a bad act—whereas the negligent discharge in *Washington* was a mere accident. *Id.* (noting that "the jury was not aware, until he testified at least, that [the defendant] had a criminal record or might be a person prohibited from owning or possessing a firearm.").

[56] 28 A.3d 418, 429–31 (Del. 2011) (although neither witness saw defendant commit robbery, it was enough that both placed him at the scene, and one saw him "fleeing up the street while another individual was 'tussling' with" victim).

[57] *See Lloyd v. State*, 604 A.2d 418, 1991 WL 247737, at *3 (Del. Nov. 6, 1991) (ORDER) ("It would be odd indeed to hold that such testimony is sufficient to support a criminal conviction yet insufficient to show reliability under the 'plain, clear and conclusive' standard of *Getz*. If such evidence may be considered proof beyond a reasonable doubt, it certainly may be considered 'plain, clear, and conclusive.'").

Defendant possessed the firearm on July 17, 2024.

"A person is guilty of carrying a concealed deadly weapon when the person carries concealed a deadly weapon upon or about the person without a license to do so[.]"[58] "[T]he key to whether a concealed deadly weapon may be deemed to be 'about' the person should be determined by considering the immediate availability and accessibility of the weapon to the person."[59] Because the pistol was immediately available and accessible by retrieving it from the bag near Defendant's feet, it was about his person.[60]

Of course, "[m]ere proximity to, or awareness of [the firearm] is not sufficient" to find possession.[61] Here, however, the State has marshaled more evidence than mere proximity. Further proof of Defendant's possession comes from the fingerprint on the marijuana. "[I]t is well established that circumstantial evidence may prove constructive possession."[62]

To avoid any ambiguity, it is not the criminality of the act but the strength of the evidence that Defendant possessed a firearm used in the shooting that is relevant to the Court's analysis.[63] Even if Defendant were not a person prohibited from possessing a firearm, and even if he had a license to carry one concealed, his

---

[58] 11 *Del. C.* § 1442. Although the statute has been amended since the time of the alleged offense, those amendments did not alter this language. *See* 84 Del. Laws ch. 371 (2024).

[59] *Gallman v. State*, 14 A.3d 502, 504 (Del. 2011) (quoting *Dubin v. State*, 397 A.2d 132, 134 (Del. 1979)).

[60] *See Buchanan v. State*, 981 A.2d 1098, 1104–1105 (Del. 2009) (firearms in zippered bag behind driver's seat were sufficiently available and accessible to support conviction even though they were not loaded).

[61] *Sawyer v. State*, -- A.3d --, 2025 WL 707871, at *3 (Del. Mar. 5, 2025) (ORDER) (quoting *Lecates v. State*, 987 A.2d 413, 426 (Del. 2009) (alteration in original)).

[62] *Smith v. State*, 2015 WL 1422427, at *3 (Del. Mar. 26, 2015) (ORDER) (quoting *Lecates*, 987 A.2d at 426); *cf. id.* at *1–3 (testimony that, when pulled over by police, juvenile leaned toward vehicle's center console, where knife was concealed, was adequate for Family Court to find constructive possession in delinquency adjudication).

[63] *Cf. Risper v. State*, 250 A.3d 76, 89 (Del. 2021) (fact that victim stole from defendant, not the fact that the stolen item was illicit drug, was logically relevant to defendant's motive to murder victim).

possession of *the* firearm used in the July 3 shooting would still be relevant to his participation therein. That the proffered evidence of possession would be sufficient to convict Defendant is merely one test to show that the proof Defendant in fact possessed said firearm on July 17 is plain, clear, and conclusive.

### iv. The fourth *Getz* factor favors admissibility.

The two weeks that elapsed between the shooting and the discovery of the firearm do not render the incidents so remote that Rule 404(b) frustrates the State's efforts. "Evidence is too remote in time 'only where there is no visible, plain, or necessary connection between it and the proposition eventually to be proved.'"[64] Although frequently analogized to the ten-year test for impeachment by prior criminal conviction under D.R.E. 609(b), *Getz*'s remoteness standard is not a bright line.[65] The Supreme Court has approved the use of novel analyses when a case presents issues not contemplated by the generic *Getz* framework.[66]

This, however, is not a case requiring a novel conceptual construct or clever analogy. This case can instead be decided by an intuitive application of the general rule: Defendant was found with the gun implicated in the shooting, two weeks after it occurred, in the car that had apparently delivered the shooters to the scene of the crime. The connection between those facts and his identity as one of the shooters is plain, which is why Defendant hopes to avoid the jury's learning of them. Thus, the fourth *Getz* factor strongly favors the State.

### v. Neither the fifth *Getz* factor nor D.R.E. 403 requires excluding the challenged evidence.

Even if *Getz* were otherwise inapplicable, Rule 14 would still require the Court to apply its fifth factor, which balances the challenged evidence's probative

---

[64] *Kendall v. State*, 726 A.2d 1191, 1195 (Del. 1999) (quoting *Lloyd*, 1991 WL 247737, at *3).
[65] *State v. Slaughter*, 2017 WL 87061, at *5 (Del. Super. Jan. 10, 2017) (citing *Allen v. State*, 644 A.2d 982, 988 (Del. 1994)).
[66] *See Taylor v. State*, 777 A.2d 759, 768–69 (Del. 2001).

value with the risk of undue prejudice, consistent with D.R.E. 403.[67]  The CCDW evidence is not barred by Rule 403, because Defendant has failed to make the requisite showing.    In *Gibson*, the Supreme Court summarily rejected the defendant's claims under the fifth *Getz* factor because the defendant "ma[de] only conclusory statements as to any prejudice incurred."[68]  The Court noted that there is always "potential for prejudice inherent in a joint trial of separate offenses," but that trying a murder and attempted murder in the same trial likely caused that defendant "minimal, if any" prejudice, because the defendant could posit only that "cumulation of evidence and the inference of criminal disposition" prejudiced him.[69]  Here, Defendant's motion similarly asserts that "[t]he jury will likely infer criminal disposition and not be able to compartmentalize the evidence[.]"[70]  Defendant's claim is, as in *Gibson*, conclusory.  Moreover, as the *Gibson* Court recognized, these risks are common to any trial of multiple offenses.  If Defendant's claims mandated severance, joinder would be categorically barred—an extreme outcome for which no authority exists.  "Severance is not required *ipso facto*, simply because the alleged charges . . . occur[red] at separate times."[71]

Rather than relying entirely on an analogy to previous cases, however, this Court must conduct its own analysis.  "When considering the fifth *Getz* factor . . . the trial court must consider the nine factors set forth by [the Supreme Court] in *Deshields v. State*."[72]  Those factors are:  (1) the extent to which the point to be proved is disputed; (2) the adequacy of proof of the other conduct; (3) the probative

---

[67] *Pope*, 632 A.2d at 78.

[68] *Gibson*, 2025 WL 1514413, at *9.

[69] *Id.*

[70] Defendant's Motion ¶ 5.

[71] *Fortt v. State*, 767 A.2d 799, 803 (Del. 2001); *accord Ashley*, 85 A.3d at 85 ("The mere fact that the crimes were 'separate', [sic] and were committed against individuals with a lapse of time between them, does not require severance." (quoting *Skinner*, 575 A.2d at 1118)).

[72] *Gibson*, 2025 WL 1514413, at *15 (citing *Deshields*, 706 A.2d 502).

force of the evidence; (4) the proponent's need for the evidence; (5) the availability of less prejudicial proof; (6) the inflammatory or prejudicial effect of the evidence; (7) the similarity of the other wrong to the charged offense; (8) the effectiveness of limiting instructions; and (9) the extent to which other act evidence would prolong the proceedings.[73]

These factors are in part duplicative of the broader *Getz* analysis, and thus merit only brief discussion. Applied to this case, the *Deshields* factors militate for the same result *Gibson* suggests. Here, (1) identity is disputed, as stated *supra*; (2) the proof of Defendant's firearm possession on July 17 is, as also stated *supra*, compelling; (3) Defendant's possession of one of the guns used in the July 3 shooting and tie to the Lexus/its driver are highly probative of his identity as one of the shooters; (4) the State is in need of the evidence because it cannot prove its case without evidence of Defendant's identity as a shooter; (5) relatedly, neither party has identified any less prejudicial proof of identity that could substitute,[74] nor is there an apparent way to sanitize the evidence while maintaining its probity;[75] (6) the

---

[73] *Deshields*, 706 A.2d at 506. As originally formulated, the *Deshields* test contemplated only "prior" bad acts. The Court has rephrased it here, given that the discovery of the firearm in this case was subsequent to the shooting and that, as noted *supra*, Rule 404(b) does not distinguish between prior and subsequent uncharged bad acts.

[74] *See Gibson*, 2025 WL 1514413, at *16–17 (approving trial court's analysis referencing the parties' failure to identify such alternative evidence). Other than the firearm discovered on July 17, the only facts tying Defendant to the July 3 shooting are his presence in the tan Lexus two weeks later and the fact that the other suspected shooter posted an image to social media on July 18 depicting three individuals in a similar vehicle. The State contends that the driver and front passenger were dressed as the Lexus's driver and one of the shooters did on July 3, and initially contended that the rear passenger was Defendant. The State has now acknowledged some ambiguity about the rear passenger's identity (because Defendant's distinctive dreadlocks are not visible in the image) and has asked the Court not to rely on the social media post in deciding this matter. Even had the State not made this effective concession, the probative value of the photograph would be limited, because the rear passenger is not dressed like either shooter and the photograph is undated.

[75] *Compare State v. Lecompte*, 2024 WL 980484, at *4 (Del. Super. Mar. 6, 2024) (when defendant possessed vehicles was probative of identity, but fact that vehicles were obtained via carjacking was unduly prejudicial and should be excluded).

possession evidence is substantially less inflammatory than the evidence of the shooting, and the former thus presents little danger of unfair prejudice in a trial for the latter;[76] (7) although the two incidents are linked in that both involved the same firearm, CCDW is a mere possessory crime, so the jury is unlikely to infer violent propensity from it,[77] particularly given the proper jury instruction;[78] (8) the Court sees no reason that a limiting instruction would be ineffective in this case;[79] and (9) the admission of the possession evidence would not meaningfully lengthen the trial and would, if severed, result in a significant judicial inefficiency given the need for duplicative testimony in separate trials.

### vi. The *Getz* and D.R.E. 403 analyses require that Defendant's motion to sever be denied.

Considering all of the foregoing, the Court concludes that Defendant's claims of prejudice do not rise above the hypothetical. In other words, Defendant has not

---

[76] Viewed from the other perspective, although the evidence of the shooting could be somewhat inflammatory relative to the CCDW charge, it would be no more prejudicial than other bad acts that have been found properly joined. *See, e.g.*, *Gibson*, 2025 WL 1514413, at *16 (redacted video depicting a murder); *Wood*, 956 A.2d at 1232 (allegations of child sexual abuse); *Morse v. State*, 120 A.3d 1, 9–11 (Del. 2015) (abusive physical discipline of child); *Phillips v. State*, 154 A.3d 1146, 1157–59 (Del. 2017) (en banc) (evidence of gang participation).

[77] The Court notes that, although CCDW is illegal in Delaware, reasonable minds may differ on whether carrying a firearm in a bag is an inherently wrongful act (*malum in se*), or whether this species of CCDW is merely legally prohibited (*malum prohibitum*). *See, e.g.*, *Buchanan*, 981 A.2d at 1105 (describing Delaware's statutory prohibition on such transport as "odd"). Certain other states also generally authorize concealed carry of firearms without obtaining a permit. *See, e.g.*, Mo. Rev. Stat. § 571.030 (2023). In short, the stigma attached to, and therefore the negative inferences a jury is likely to draw from, this sort of CCDW is less than that involved with other crimes that are universally abhorred (e.g., rape or murder).

[78] *Cf. Morse*, 120 A.3d at 10 & n.48 (approving trial court's determination that, in case for assault, reckless endangering, and endangering the welfare of a child, accusations of prior abuse were "similar to the charged offenses, but not so similar to close the jury's mind given the proper instruction.").

[79] *See Revel v. State*, 956 A.2d 23, 27 (Del. 2008) ("Juries are presumed to follow the trial judge's instructions."); *see also State v. Gibson*, 2023 WL 7004105, at *12 (Del. Super. Oct. 23, 2023), *aff'd*, 2025 WL 1514413 (Del. May 28, 2025) (ORDER) ("limiting instructions are likely to be effective because the proffered evidence is no more inflammatory, and possibly less inflammatory when redacted, than the charged crimes[.]"); *Lecompte*, 2024 WL 980484, at *4 (same).

shown a reasonable probability that he would be substantially prejudiced by joinder. It may well be that severing the charges would better Defendant's chances in a separate trial for the possession charge. This is not enough, however. "[A] defendant is not entitled to a separate trial merely because he might then stand a better chance of being acquitted."[80] Nonetheless, the Court will, consistent with the sixth *Getz* factor, give the jury a limiting instruction if this case proceeds to trial.

### B. The Court's rejection of Defendant's motion to sever moots his motion *in limine*, because Rule 404(b) does not require the exclusion of evidence concerning bad acts charged and tried together.

As the Court has already determined that Rule 404(b) would not bar admission of the CCDW evidence in a separate trial for the other charges, Defendant's motion *in limine* could be denied on that basis alone. However, the Court's conclusion that the charges should not be severed requires that Defendant's motion be denied for a more fundamental reason. As the Supreme Court explained in *Getz*, "D.R.E. 404(b) forbids the proponent . . . from offering evidence of the defendant's *uncharged* misconduct to support a general inference of bad character."[81] Rule 404(b) simply is inapplicable to evidence of *charged* misconduct used for purposes other than propensity.[82] "If charges are properly joined, there is no longer concern about prior conduct that was never proven. Rather, in one trial, the State must prove beyond a reasonable doubt that each set of conduct occurred for the defendant to be found guilty on all counts."[83] Interpreting D.R.E. 404 otherwise would impracticably (and contrary to Rule 8's preference for judicial economy) necessitate separate trials for

---

[80] *Taylor*, 76 A.3d at 801 (quoting *Bradley v. State*, 559 A.2d 1234, 1241 (Del. 1989)).
[81] 538 A.2d at 730 (emphasis supplied); *accord Pope*, 632 A.2d at 76 ("The policy underlying D.R.E. 404(b) . . . mandates that evidence of *uncharged* misconduct be analyzed *first*, *vis-à-vis* the listed exceptions, even though the rule is 'inclusionary[.]'") (partial emphasis in original).
[82] *State v. Lamb*, 2010 WL 3103393, at *12 (Del. Super. May 18, 2010) (Parker, C.).
[83] *Wood*, 956 A.2d at 1232.

nearly every charge, even if not mandated by Rule 14.

### III.  CONCLUSION

For the foregoing reasons, Defendant's motion to sever is **DENIED.** Defendant's motion *in limine* to exclude evidence is likewise **DENIED.**

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP/tls

oc:    Prothonotary

cc:    Counsel of Record